[This opinion has been published in *Ohio Official Reports* at 80 Ohio St.3d 10.]

DAVIS, ADMR., APPELLEE AND CROSS-APPELLANT, *v*. IMMEDIATE MEDICAL SERVICES, INC. ET AL., CROSS-APPELLEES; EM CARE OF ALLIANCE, INC. ET AL., APPELLANTS.

[Cite as *Davis v. Immediate Med. Serv., Inc.*, 1997-Ohio-363.]

*Civil procedure—Determining whether default judgment can be entered against a defendant who was ultimately found not negligent at trial—Applicability of Civ.R. 6(B)(2) with respect to the propriety of a default judgment—Admissibility of evidence of bias stemming from commonality of insurance between the witness and a malpractice defendant.*

1. A plaintiff has the right to have a motion for default judgment heard and decided before trial.

2. In an action for medical malpractice, an expert witness having the same malpractice insurer as another defendant is subject to inquiry concerning bias if the witness testifies favorably for that defendant. (*Ede v. Atrium S. OB-GYN, Inc.* [1994], 71 Ohio St.3d 124, 642 N.E.2d 365, construed and followed.)

3. Where an expert has a financial incentive to be biased, the jury may determine whether that bias exists and how that bias affects all defendants who are contesting similar issues and who benefit from the expert's testimony, regardless of commonality of insurance. (*Ede v. Atrium S. OB-GYN, Inc.* [1994], 71 Ohio St.3d 124, 642 N.E.2d 365, construed and followed.)

(No. 96-203—Submitted May 7, 1997—Decided October 8, 1997.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Stark County, No. 94CA0253.

———————————

{¶ 1} This case involves medical malpractice and wrongful death claims brought by Evelyn Davis, the plaintiff-appellee and cross-appellant, as administrator of the estate of her husband, Albert Davis. Mr. Davis died on April 25, 1991 due to an infection resulting from a ruptured appendix. In the days prior to his death, Mr. Davis and his wife visited several health care providers for treatment. Her complaint alleged that their negligence culminated in the death of her husband.

{¶ 2} Mr. Davis began experiencing pain in his right lower abdomen on April 7, 1991. Concerned about her husband, Mrs. Davis consulted a medical book at home. After reading the book, Mrs. Davis felt that her husband's symptoms were indicative of appendicitis. Because of their suspicions and Mr. Davis's pain, the couple went to Immediate Medical Services, Inc. ("IMS"), defendant and cross-appellee. At this emergency care facility, Mr. Davis was examined by Dr. Barbara Guarnieri, defendant and cross-appellee, who took a history and performed a number of tests. Dr. Guarnieri was employed by Alliance Immediate Care, Inc. ("AIC"), defendant-appellant, which apparently had a contractual relationship with IMS.

{¶ 3} The Davises told Dr. Guarnieri of their suspicion of appendicitis. After examining Mr. Davis and concluding that the tests did not indicate appendicitis, Dr. Guarnieri diagnosed a urinary tract infection, a condition that Mr. Davis had said he had suffered from a few years earlier. Dr. Guarnieri prescribed antibiotics and told Mr. Davis that he should consult his own physician if he did not feel better in a couple of days.

{¶ 4} Although he took the medication prescribed by Dr. Guarnieri, Mr. Davis's illness continued after his initial visit. Two days later, Mr. and Mrs. Davis went to the emergency room at defendant Alliance Community Hospital. While there, Mr. Davis was treated by Dr. Geno Serri. Dr. Serri was employed by EM Care of Alliance, Inc. ("EM Care"), appellant, which had a contractual relationship

with the hospital. Mr. Davis told Dr. Serri that he was experiencing lower abdominal pain which had not subsided, and again expressed his concern that it was appendicitis. Dr. Serri examined Mr. Davis and ordered additional tests, eventually diagnosing abdominal pain with an uncertain cause. He told Mr. Davis to complete the course of antibiotics, and also gave him a prescription for pain medication. Dr. Serri also contacted Mr. Davis's family physician, Dr. William Eichner, and told the couple to schedule a follow-up appointment with him.

{¶ 5} On April 15, 1991, Mr. and Mrs. Davis visited defendant Dr. William Eichner, Mr. Davis's family doctor, at a scheduled appointment. Mr. Davis told the doctor that he felt better that day but had experienced some cramping over the weekend. Dr. Eichner eventually concluded that Mr. Davis had a urinary tract infection with resolved symptoms of gastroenteritis. Dr. Eichner prescribed medication for stomach discomfort and scheduled Mr. Davis for a follow-up visit for April 30, 1991.

{¶ 6} Eight days later, on April 23, 1991, Mr. Davis returned to the emergency room at Alliance Community Hospital with severe pain and breathing difficulties. Dr. Serri again examined Mr. Davis; however, Mrs. Davis requested that Dr. Serri contact Dr. Duane C. Kuentz, her physician.

{¶ 7} Dr. Kuentz arrived at the hospital at approximately 3:30 p.m. and determined that Mr. Davis was suffering from multiple abdominal abscesses, which may have resulted from a ruptured appendix. At 5:00 p.m., Dr. Kuentz contacted a general surgeon, Dr. William Fiegenschuh, to consult about possible surgery. Dr. Fiegenschuh arrived at the hospital around 9:00 p.m. that evening but determined that Mr. Davis needed to be stabilized before surgery could occur on the following day.

{¶ 8} Dr. Fiegenschuh eventually performed an exploratory laparotomy around 1:00 p.m. the following day. Dr. Fiegenschuh discovered and drained the abscesses. He also removed the appendix, which had ruptured. Despite surviving

the surgery, Mr. Davis could not withstand the infection that had resulted from the burst appendix, and died the next day, April 25, 1991.

{¶ 9} A complaint was filed on October 9, 1992 against IMS, Dr. Barbara Guarnieri, EM Care, Dr. Eichner, and Alliance Community Hospital, alleging negligent medical care.[1] An amended complaint was filed on April 23, 1993, adding AIC (Dr. Guarnieri's employer) and Dr. Fiegenschuh as parties.[2]

{¶ 10} The jury eventually returned verdicts in favor of all the above defendants except for Dr. Eichner, who was found liable in the amount of $643,000.

{¶ 11} The court of appeals affirmed the judgment in part and reversed it in part. A new trial was ordered against defendant EM Care on the basis that the trial court should have allowed plaintiff to cross-examine an expert witness on the issue of possible bias. The appellate court also held that it was error to deny plaintiff's pretrial default motion against AIC. The remainder of the judgment was affirmed.

{¶ 12} The cause is now before this court pursuant to the allowance of a discretionary appeal and cross-appeal.

————————————

*Tzangas, Plakas & Mannos*, *Lee E. Plakas* and *Christopher M. Huryn*, for appellee and cross-appellant, Evelyn Davis.

*Buckingham, Doolittle & Burroughs*, *Gary A. Banas*, *Marlene C. Gebauer* and *Christopher S. Humphrey*, for appellant Alliance Immediate Care, Inc., and cross-appellee, Barbara Guarnieri, M.D.

*Jacobsen, Maynard, Tuschman & Kalur*, *Janis L. Small*, *R. Mark Jones* and *William A. Davis*, for appellant EM Care of Alliance, Inc.

————————————

1. The complaint also named Drs. Geno Serri, Andres Lao, and Edward Mitchell as defendants. However, all of these parties were dismissed with prejudice and are not part of this appeal.
2. The trial court granted the motion of Dr. Fiegenschuh and William H. Fiegenschuh, M.D., Inc. to order plaintiff's claims of negligent credentialing tried separately. Thus, they are not part of this appeal.

*Jacobsen, Maynard, Tuschman & Kalur*, *John A. Simon* and *John S. Polito*, for cross-appellee Immediate Medical Services, Inc.

_____

**FRANCIS E. SWEENEY, SR., J.**

{¶ 13} In this case, we are asked to determine whether a default judgment can be entered against a defendant who was ultimately found not negligent at trial. We also look at the applicability of Civ.R. 6(B)(2) with respect to the propriety of default judgment. In addition, we examine the admissibility of evidence of bias stemming from commonality of insurance between the witness and a malpractice defendant. For the following reasons, we affirm in part and reverse and remand in part. Specifically, we affirm the court of appeals' judgment ordering the entry of a default judgment against AIC and a new trial against EM Care. We reverse the court of appeals' judgment to the extent that it denied a new trial against Dr. Guarnieri and IMS.

I

Appeal of AIC of Default Judgment

{¶ 14} Three days before trial, Mrs. Davis filed a motion for default judgment against AIC, due to AIC's failure to answer her amended complaint. On the morning of trial, Gary Banas, the attorney representing AIC and Dr. Guarnieri, argued against the motion. Banas claimed surprise that AIC was a party, since he had not known of the amended complaint and had not received a copy until two days before trial, although the amended complaint had been properly served upon AIC's statutory agent thirteen months before. At trial, Banas argued excusable neglect under Civ.R. 60(B), the rule for relief from judgment. Despite this irregularity, the judge denied the motion for default and permitted Banas to file an answer *instanter*.

{¶ 15} The answer filed by Banas was miscaptioned "Answer of Defendant Immediate Medical Care, Inc.," a corporation which had never been a party to the

lawsuit.  The plaintiff brought the error to the court's attention at the close of the defendants' evidence.  Banas responded that he had been confused from the beginning of the case about the names of the litigants in this action and asked that he be allowed to correct the mistake.  The trial court stated that it would look at the pleadings and make a ruling.  The court never directly ruled on the issue.  However, the court denied plaintiff's motion for default judgment, in effect, when it submitted verdict forms to the jury naming AIC as a defendant.  On appeal, the plaintiff argued that the trial court abused its discretion in failing to grant default judgment against AIC.  The court of appeals agreed, and we concur with this finding.

{¶ 16} Default judgment may be awarded when a defendant fails to make an appearance by filing an answer or otherwise defending an action.  Civ.R. 55(A).  Civ.R. 6(B)(2) allows for an extension of time to file a late pleading within the trial court's discretion "upon motion made after the expiration of the specified period * * * where the failure to act was the result of excusable neglect."  A ruling by the trial court on such a motion will be upheld absent an abuse of discretion.  *Marion Prod. Credit Assn. v. Cochran* (1988), 40 Ohio St.3d 265, 271, 533 N.E.2d 325, 331.

{¶ 17} In determining whether neglect is excusable or inexcusable, all the surrounding facts and circumstances must be taken into consideration.  *Griffey v. Rajan* (1987), 33 Ohio St.3d 75, 514 N.E.2d 1122, syllabus.  Neglect under Civ.R. 6(B)(2) has been described as conduct that falls substantially below what is reasonable under the circumstances.  *State ex rel. Weiss v. Indus. Comm.* (1992), 65 Ohio St.3d 470, 473, 605 N.E.2d 37, 39, citing *GTE Automatic Elec., Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 152, 1 O.O.3d 86, 89, 351 N.E.2d 113, 117.

{¶ 18} Based upon this court's decision in *Miller v. Lint* (1980), 62 Ohio St.2d 209, 16 O.O.3d 244, 404 N.E.2d 752, the court of appeals found that AIC failed to substantially comply with the Rules of Civil Procedure when it did not file

an answer and then filed a deficient answer when given permission by the trial court. We agree.

{¶ 19} In *Lint*, we held that although Civ.R. 6(B) grants broad discretion to the trial court concerning procedural matters, such discretion is not unlimited. *Id.* at 214, 16 O.O.3d at 247, 404 N.E.2d at 755. *Lint* involved a defendant who did not file an answer in the specified time period and made no showing of excusable neglect. In ruling against the defendant we stated that "the failure of the defendant to comply, even substantially, with the procedures outlined in the Civil Rules subjected her to the motion for a default judgment, and the plaintiffs, having complied with the Civil Rules, had a right to have their motion heard and decided before the cause proceeded to trial on its merits." *Id.* at 214, 16 O.O.3d at 247, 404 N.E.2d at 755.

{¶ 20} The trial court, based only on the statement of AIC's counsel that he had received a copy of the amended complaint only two days before, found excusable neglect and permitted AIC's attorney to file an answer *instanter*. We disagree with this determination. When viewed in its entirety, the conduct of AIC and of AIC's counsel was unreasonable and did not constitute excusable neglect.

{¶ 21} There was incontrovertible evidence that an amended complaint had been filed and that AIC should have been aware of its existence. To begin with, it is uncontradicted that the amended complaint had been served on AIC's statutory agent by certified mail thirteen months before trial. Not only was AIC's statutory agent properly served, but the certificate of service attached to the amended complaint states that AIC's counsel was sent the amended complaint by ordinary mail. Under these specific circumstances, this conduct is not excusable neglect. Therefore, the trial court should not have allowed counsel to file a late pleading.

{¶ 22} AIC alleges that the subsequent jury verdict in favor of AIC should preclude a default judgment against it, since AIC had been exonerated on the merits. We reject this argument. The verdict rendered by the jury in AIC's favor is

irrelevant. A plaintiff has the right to have a motion for default judgment heard and *decided* before trial. *Lint,* 62 Ohio St.2d at 214, 16 O.O.3d at 247, 404 N.E.2d at 755. A defendant's right to force a plaintiff to prove his or her claim depends upon the defendant's compliance with the Civil Rules and the timely filing of an answer to the complaint. Otherwise, the sanctions for noncompliance would lose their deterrent effect. Even though we recognize that it is preferable to hear a case upon its merits, the rules of procedure must be applied consistently, and AIC's noncompliance cannot be overlooked. As we stated in *Lint*, "However hurried a court may be in its efforts to reach the merits of a controversy, the integrity of procedural rules is dependent upon consistent enforcement because the only fair and reasonable alternative thereto is complete abandonment." *Id.* at 215, 16 O.O.3d at 247, 404 N.E.2d at 755. Therefore, we affirm the judgment of the court of appeals regarding AIC.

## II

### Cross-Examination of Expert Witness

{¶ 23} During trial, Dr. Guarnieri, the initial treating doctor, presented the expert testimony of Dr. Bruce D. Janiak. Dr. Janiak revealed during *voir dire*, outside the presence of the jury, that he was insured by Physician's Insurance Exchange Company ("P.I.E."). The parties do not dispute that although Dr. Guarnieri was not insured by P.I.E., other defendants in the case were, specifically EM Care. The plaintiff wanted to question Dr. Janiak concerning his insurance coverage to show bias. However, the trial court ruled that the insurance link could not be introduced as evidence of bias, as Dr. Janiak's testimony was concerned solely with Dr. Guarnieri.

{¶ 24} Plaintiff appealed, alleging that she should have been allowed to cross-examine Dr. Janiak to show bias based on similar insurance coverage. The court of appeals agreed in part and ordered a new trial against EM Care. Judge Hoffman, in his concurrence, however, stated his belief that a new trial was also

warranted against Dr. Guarnieri and IMS, since Dr. Janiak's testimony benefited them as well, and since the lack of opportunity to show bias prejudiced the plaintiff.

{¶ 25} The issue then, is whether the trial court improperly denied plaintiff the opportunity to cross-examine a medical expert concerning commonality of insurance. We examine this issue pursuant to an abuse-of-discretion standard. *Calderon v. Sharkey* (1982), 70 Ohio St.2d 218, 24 O.O.3d 322, 436 N.E.2d 1008, syllabus.

{¶ 26} In *Ede v. Atrium S. OB-GYN, Inc.* (1994), 71 Ohio St.3d 124, 642 N.E.2d 365, syllabus, we stated that in a medical malpractice action, "evidence of a commonality of insurance interests between a defendant and an expert witness is sufficiently probative of the expert's bias as to clearly outweigh any potential prejudice evidence of insurance might cause." In that case, the defendant physician and the physician testifying as an expert witness on his behalf were insured by the same malpractice insurer. Our decision in *Ede* was necessitated by the Pavlovian response that many judges have in assuming that prejudice will result from disclosure of insurance coverage. In discouraging such rote behavior, we stated that "[t]he legal charade protecting juries from information they already know keeps hidden from them relevant information that could assist them in making their determinations." *Id.* at 127, 642 N.E.2d at 368. This reasoning is supported by Evid.R. 102, which states: "The purpose of these rules is to provide procedures for the adjudication of causes to the end that the truth may be ascertained and proceedings justly determined." *Ede* is further supported by Evid.R. 411, which states that evidence of liability insurance is admissible when offered for the purpose of proving bias or prejudice of a witness. The Evidence Rules favor inclusion of relevant evidence at trial, Evid.R. 402, limiting its admissibility only in specific circumstances, such as where prejudice outweighs probativeness. Evid.R. 403(A). We held in *Ede* that evidence of bias based on commonality of insurance between

a malpractice defendant and an expert testifying in his or her favor was sufficiently probative to outweigh any possible prejudice.

## A. Appeal of EM Care

{¶ 27} Dr. Guarnieri called Dr. Bruce D. Janiak, a physician insured by P.I.E., as a medical expert to testify on her behalf. Although Dr. Guarnieri was not insured by P.I.E, the fact that her co-defendant EM Care had the same insurance company as the expert witness is sufficient for our decision in *Ede* to apply. Our holding in *Ede* was not limited to evidence of commonality of insurance between a defendant and the expert called by that defendant. In an action for medical malpractice, an expert witness having the same malpractice insurer as another defendant is subject to inquiry concerning bias if the witness testifies favorably for that defendant.

{¶ 28} Even though Dr. Janiak stated that he had no opinion concerning the standard of care of any other defendant, his testimony for Dr. Guarnieri benefited the other emergency care doctors at trial, and the plaintiff should have been allowed to elicit evidence of any potential bias based on commonality of insurance. Specifically, Dr. Janiak testified as to the role of the emergency physician in evaluating and deciding what further medical treatment is appropriate. Furthermore, Dr. Janiak stated that appendicitis is "one of the hardest diagnoses in medicine to make" and "about the best that the emergency physician can do [in cases of abdominal pain] is make a judgment as to whether we think the patient ought to have a surgical evaluation." Dr. Janiak expressed that his testimony was meant to apply only to the initial evaluation made by Dr. Guarnieri. Nevertheless, such testimony has a spillover effect in bolstering the defenses of other emergency care providers in this case, and the jury could easily consider his testimony to be in favor of all such providers. Thus, there was sufficient foundation to impeach Dr. Janiak on the question of bias. We believe that the trial court abused its discretion in refusing to allow the plaintiff to cross-examine the expert witness on this issue.

We recognize that *Ede* had not been decided at the time of this trial. However, under *Ede*, the trial court acted unreasonably in not allowing probative evidence concerning bias, which prejudiced plaintiff's ability to thoroughly cross-examine defendant's medical expert. As in *Ede*, it is for the jury to weigh the credibility of evidence concerning bias, and the trial court should have allowed plaintiff to elicit such testimony. Therefore, the appellate court's judgment ordering a new trial against EM Care is affirmed.

### B. Cross-Appeal of Evelyn Davis

{¶ 29} The court of appeals found that a new trial was warranted only against EM Care based on *Ede*. However, we believe that since Dr. Janiak's testimony concerning the standard of care of emergency room physicians flowed to all other emergency care providers in this case, the court of appeals should have also granted a new trial against Dr. Guarnieri and IMS.

{¶ 30} In his separate opinion below, Judge Hoffman stated that Dr. Janiak's expert opinion may have been colored, since other defendants at trial were also insured by the same company. Specifically, he elaborated that "[o]nce it is recognized that Dr. Janiak's opinion may be colored by his potential pecuniary bias, such opinion is necessarily colored as to all medical providers in the same lawsuit who share the same duty of care, including non-P.I.E. insured medical providers."

{¶ 31} Judge Hoffman concluded that while this was an extension of our holding in *Ede*, it was consistent with the rationale behind *Ede* of allowing the jury to consider whether Dr. Janiak's opinion was biased as a result of his status as a P.I.E. insured and, if so, whether that bias affected the weight to be given to his opinion as it relates to the non-P.I.E. defendants on whose behalf it was offered (Dr. Guarnieri and IMS) and to the P.I.E.-insured emergency care provider (EM Care).

{¶ 32} Since Dr. Janiak testified as to the standard of care for emergency room physicians, the jury should have been able to determine whether any possible bias existed which may have affected Dr. Janiak's conclusions as to all emergency

care providers similarly situated, irrespective of whether they were commonly insured. As plaintiff points out, it is a favorite tactic of medical malpractice co-defendants to have each other's experts lend testimonial support to other defendants in the case. Where an expert has a financial incentive to be biased, the jury may determine whether that bias exists and how that bias affects all defendants who are contesting similar issues and who benefit from the expert's testimony, regardless of commonality of insurance.

## III

{¶ 33} Therefore, the judgment of the court of appeals ordering a new trial against EM Care is affirmed. The court of appeals' judgment denying a new trial against Dr. Guarnieri and IMS is reversed. We affirm the appellate court's judgment ordering the entry of a default judgment against AIC. The cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

DOUGLAS, RESNICK and PFEIFER, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

_____

**COOK, J., dissenting.**

{¶ 34} I respectfully dissent from the majority opinion. Although I agree that AIC's failure to properly answer the amended complaint entitled Davis to a default judgment, I disagree with the majority's conclusion that the later jury verdict exonerating Dr. Guarnieri and AIC is "irrelevant." Rather, the verdict renders the trial court's failure to grant a default judgment against AIC nonprejudicial. Additionally, I dissent from the extension of the holding in *Ede v. Atrium S. OB-GYN, Inc.* (1994), 71 Ohio St.3d 124, 642 N.E.2d 365.

## I. DEFAULT JUDGMENT

**{¶ 35}** The majority frames the issue in the present case as whether a default judgment can be entered against a defendant who was ultimately found not negligent at trial. Yet, in its discussion of the issue, the majority neglects the leading case on the subject, *Frow v. De La Vega* (1872), 82 U.S. (15 Wall.) 552, 21 L.Ed. 60. In that case, the Supreme Court held that when multiple defendants are alleged to be jointly liable and fewer than all defendants default, a court may *not* render a liability determination as to the defaulting parties *unless and until* the remaining defendants are found liable on the merits. Justice Bradley wrote, "If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the others, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill. And such an incongruity, it seems, did actually occur in this case. Such a state of things is unseemly and absurd, as well as unauthorized by law.

**{¶ 36}** "[I]f the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike—the defaulter as well as the others. If it be decided in the complainant's favor, he will then be entitled to a final decree against all." *Id.* at 554, 21 L.Ed. at 61.

**{¶ 37}** The *Frow* doctrine has been widely accepted by treatises, see 10 Moore's Federal Practice (3 Ed.1997), Section 55.25; 10 Wright, Miller & Kane, Federal Practice and Procedure (2 Ed.1983), Section 2690; 21 Federal Procedure, Lawyers Edition (1997), Section 51:64, and by the federal circuits. See *Farzetta v. Turner & Newall, Ltd.* (C.A.3, 1986), 797 F.2d 151, 154 (stating that *Frow* stands for the proposition that "if at trial facts are proved that exonerate certain defendants and that as a matter of logic preclude the liability of another defendant, the plaintiff should be collaterally estopped from obtaining a judgment against the latter

defendant, even though it failed to participate in the proceeding in which the exculpatory facts were proved"); *In re Uranium Antitrust Litigation* (C.A.7, 1980), 617 F.2d 1248, 1256-1258 (distinguishing *Frow* on grounds that, because liability in the case at bar was joint and several, nonliability of some defendants would not logically preclude liability of other defendants). In *Internatl. Controls Corp. v. Vesco* (C.A.2, 1976), 535 F.2d 742, 746, fn. 4, the court questioned the continued validity of *Frow* in light of the passage of the Federal Rules of Civil Procedure, but ultimately concluded that "[i]n any event, at most, *Frow* controls in situations where the liability of one defendant necessarily depends upon the liability of the others."

{¶ 38} In the present case, Davis alleged that these defendants were jointly and severally liable and specifically that AIC was responsible for the medical malpractice of its agent, Dr. Guarnieri, by way of the doctrine of *respondeat superior*. As this court stated in *Strock v. Pressnell* (1988), 38 Ohio St.3d 207, 217, 527 N.E.2d 1235, 1244, "It is axiomatic that for the doctrine of *respondeat superior* to apply, an employee must be liable for a tort committed in the scope of his employment." Had AIC properly answered, as a matter of logic and law, it would be impossible to maintain an action against AIC after the jury exonerated Dr. Guarnieri of liability.

{¶ 39} The *Frow* doctrine was meant to apply precisely in this situation, to prevent the absurdity that results in granting a judgment based on *respondeat superior* against the employer when the employee has committed no wrongdoing. Under *Frow*, the trial court could not enter a liability determination against AIC, the defaulting defendant, unless and until the remaining defendant, Dr. Guarnieri, was found liable on the merits. Because Dr. Guarnieri was not found liable on the merits, the trial court's failure to grant the default judgment was not prejudicial.

{¶ 40} The Maryland Court of Appeals, that state's highest court, reached the same conclusion in the context of *respondeat superior* in a medical malpractice

14

case. *Curry v. Hillcrest Clinic, Inc.* (1995), 337 Md. 412, 653 A.2d 934. In that case, the plaintiff alleged that the defendant hospital was liable under the doctrine of *respondeat superior* for the medical malpractice of its doctor. The hospital failed to answer and default judgment was entered against it. The hospital was permitted to participate in the scheduled arbitration hearing on the issue of damages only. The arbitration panel, however, found that to the extent that the doctor was negligent, that negligence was not the proximate cause of the plaintiff's injuries. The arbitration panel then entered a final judgment of no liability for the hospital. On appeal from the arbitration, the trial court vacated the final entry and permitted the hospital to defend on the merits. After a jury trial, a verdict was entered in favor of both the doctor and hospital on all counts. On appeal, the intermediate appellate court held that the plaintiff was not entitled to a default judgment against the hospital.

{¶ 41} The Maryland Court of Appeals agreed, holding that *Frow* "certainly operates where the conduct of a defendant who appeared and successfully defended on the merits is the sole basis for liability of a defaulting defendant under the principle of *respondeat superior*." 337 Md. at 430, 653 A.2d at 943. Specifically, the court held that "in a negligence case, a finding that an appearing agent or servant has not committed actionable negligence inures to the benefit of a defaulting principal whose liability rests solely on *respondeat superior*." *Id.* at 434, 653 A.2d at 945.

{¶ 42} Even a more relaxed view of the *Frow* rule dictates a finding that the trial court's failure to grant Davis's motion for default judgment was not prejudicial. In *Hunt v. Inter-Globe Energy, Inc.* (C.A.10, 1985), 770 F.2d 145, 148, the court held that a default judgment entered against one of several defendants, each of whom is jointly and severally liable for plaintiff's damages, establishes only liability and not the defaulting defendant's relative share of fault. Accord *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.* (C.A.7, 1983), 722 F.2d

1319, 1324; *Montcalm Publishing Corp. v. Ryan* (S.D.N.Y.1992), 807 F.Supp. 975, 977-978. Under this view of *Frow*, any default judgment against AIC could establish only its liability. AIC's responsibility for Davis's damages, however, is still dependent upon Dr. Guarnieri's liability. Because Dr. Guarnieri was exonerated, AIC's relative share of the damages is zero and Davis has suffered no harm from the trial court's failure to grant the default judgment.

## II. COMMONALITY OF INSURANCE

{¶ 43} I additionally disagree with the majority's extension of *Ede v. Atrium S. OB-GYN, Inc.* (1994), 71 Ohio St.3d 124, 642 N.E.2d 365, and join Justice Lundberg Stratton's reasoning as stated in Part II of her dissent.

{¶ 44} For these reasons, I would reverse the court of appeals' judgment ordering entry of a default judgment against AIC. I would also reverse the court of appeals' judgment ordering a new trial against EM Care and would affirm the court of appeals' judgment denying a new trial against Dr. Guarnieri and IMS.

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the foregoing dissenting opinion.

———————————

**LUNDBERG STRATTON, J., dissenting.**

{¶ 45} The discretion of a trial court is one of the keystone principles of our judicial system. Because today's decision erodes that vital principle, I respectfully dissent. I believe that the decision of the trial court was soundly within its discretion and fell far short of being unreasonable, arbitrary, or unconscionable so as to constitute an abuse of discretion. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 173, 404 N.E.2d 144, 149; *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

{¶ 46} In *State ex rel. Shafer v. Ohio Turnpike Comm.* (1953), 159 Ohio St. 581, 590-591, 50 O.O. 465, 469-470, 113 N.E.2d 14, 19, this court stated:

"'Abuse of discretion, and especially gross and palpable abuse of discretion, which are the terms ordinarily employed to justify an interference with the exercise of discretionary power, implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.'

"* * *

"'[I]t must be kept in mind that "abuse of discretion" means more than an error of law or error of judgment * * *. It means "a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence" * * *. Where the court does not exercise a discretion in the sense of being discreet, circumspect, [and] prudent and exercising cautious judgment, there is an abuse of discretion. * * * The term has been defined as "a view or action that no conscientious judge, acting intelligently, could have honestly taken."'" (Citations omitted.)

{¶ 47} Where a court exercises its discretion, as it did in this case, this court should not overturn the trial court's decision absent a finding of an abuse of discretion. *Martin v. Martin* (1985), 18 Ohio St.3d 292, 294-295, 18 OBR 342, 344, 480 N.E.2d 1112, 1114.

## I. DEFAULT MOTION

{¶ 48} The majority's paragraph one of the syllabus implies that the trial court did not decide the plaintiff's motion for default before trial. However, the trial court held a record hearing, evaluated both the evidence and the credibility of defendant AIC's position, stated its findings, and *denied* the motion for default. Therefore, the trial court did just what the syllabus mandates (unless the syllabus means "decided *in the moving party's favor*," which would remove *all* discretion from a trial court).

{¶ 49} By concluding that the trial court denied the default motion "based only on the statement of AIC's counsel," the majority's opinion also implies that the defendant failed to present evidence in its defense. Yet, AIC's counsel, Mr. Banas, clearly was prepared and offered to testify as to the reasons for the failure

to answer. Plaintiff's counsel stated that this would not be necessary, and therefore waived the formal presentation of evidence, allowing the court to rely on counsel's representations. Plaintiff cannot now complain of such lack of "evidence." The court stated that it would treat Mr. Banas's representation "[a]s if [made] under oath" and then found that it *believed* Mr. Banas. The fact that a certificate of service to Mr. Banas was attached to the amended complaint created only a rebuttable presumption of service. Mr. Banas represented that AIC had never forwarded the complaint and he had never received separate service. The court stated that it believed that the complaint had been sent but never received. The presumption was rebutted. We have no basis on which to substitute our judgment of credibility for that of the trial court.

{¶ 50} The trial court had the full scope of the case before it and was in the best position to weigh all the competing considerations. In addition to Alliance Immediate Care, other parties were Immediate Medical Services, Inc., Alliance Community Hospital, and EM Care of Alliance. Even the plaintiff in the body of her amended complaint used "Alliance Immediate Corporation." The trial court also used "Alliance Immediate Medical Services" in its ruling.

{¶ 51} When AIC's counsel mislabeled the defendant in the answer he prepared, it took plaintiff's counsel nearly three weeks (until June 10, at the close of defendants' evidence) to bring the error to the court's attention. Yet all parties and the court clearly knew that AIC, Dr. Guarnieri's employer, was the defendant, and the jury was properly instructed on the same. No different claims, discovery, trial tactics, or evidence would have been presented. No prejudice attached.

{¶ 52} I do not condone the failures of AIC or its counsel to follow the procedural rules. AIC counsel's follow-up, once he discovered the amended complaint, was sloppy lawyering indeed. But a judge has discretion to deny a motion for a default judgment after looking at all the equities involved in a particular situation. *Martin*, 18 Ohio St.3d 292, 18 OBR 342, 480 N.E.2d 1112.

**{¶ 53}** The majority stresses the need to adhere to procedural rules. However, the trial court ordered *all* dispositive motions to be filed by April 1, 1994. Yet thirteen months after service of the amended complaint, on May 20, 1994, four days before trial, the plaintiff, without leave of court, filed for default. But the majority attaches no penalty to plaintiff's failure to follow a *court order* on procedure. If we are going to strictly adhere to technical points of procedure, then fairness dictates that we should also address plaintiff's failure to follow the rules.

**{¶ 54}** The *second* oral motion for default could not possibly have been ruled on *before* trial as it was not made until the close of defendant's evidence. At that point, AIC's counsel stated that he had not realized the error in names until that moment. AIC's counsel asked, also by oral motion, albeit inartfully, to substitute names. After the verdict, the trial court granted the substitution and *sub silentio* overruled the second motion for default. Therefore, since substitution was granted, the answer could now be considered properly filed, contrary to plaintiff's claim that no answer has yet been filed. Although this was never done in writing, it was done orally and on the record. The trial court was well within its discretion to deny the second motion for default, considering that AIC had now fully participated and defended in the trial.

**{¶ 55}** Default judgment should be reserved for cases where court procedures are ignored and the process flouted, as in *Miller v. Lint* (1980), 62 Ohio St.2d 209, 16 O.O.3d 244, 404 N.E.2d 752. This fact pattern is a far cry from *Miller* and, I believe, clearly fits within that area of discretion reserved to a trial court.

**{¶ 56}** In addition, I join in Justice Cook's well-reasoned dissent as to why the issue of default is harmless error, if error at all, because the jury cleared Dr. Guarnieri, the employee, of all liability, thereby also exonerating her employer, AIC. Or conversely, AIC should now be permitted to file its proper Civ.R. 60(B) motion to set aside the default judgment. In addition, this court fails to order any hearing on damages. Civ. R. 55, concerning default, states:

"(A) * * * If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings * * * as it deems necessary and proper * * *."

{¶ 57} Defendant AIC should at least now be permitted a hearing on damages to present the results of the jury trial establishing no liability on the part of its employee, Dr. Guarnieri.

{¶ 58} The law favors trying cases on the merits, not technicalities. *Perotti v. Ferguson* (1983), 7 Ohio St.3d 1, 3, 7 OBR 256, 257, 454 N.E.2d 951, 952. This court has stated:

"Where no reply * * * is filed, there is authority for granting defendant judgment on the pleadings. However, the cases awarding judgment to a defendant for the inadvertence of an attorney to file a reply are, generally, old precedents occurring at a time when a lawsuit ofttimes developed into a test of an attorney's astuteness rather than a determination of the merit of a client's contention. To decide a lawsuit on the failure of an attorney to file a reply rather than on the merits of a claim would seem an anachronism in our present-day system of jurisprudence." (Citation omitted.) *McDonald v. Haught* (1967), 10 Ohio St.2d 43, 46, 39 O.O.2d 39, 41, 225 N.E.2d 235, 237-238.

{¶ 59} The Rules of Civil Procedure expressly favor seeking substantial justice. Civ.R. 61 states:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The

court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

{¶ 60} But the real crux of this case is whether the court, in light of all these procedural issues, abused its discretion. I believe that the trial court did not, and I therefore dissent.

## II. COMMONALITY OF INSURANCE

{¶ 61} The second issue also involves the further erosion of a trial court's discretion when ruling on evidentiary issues. The expansion of *Ede v. Atrium S. OB-GYN, Inc.* (1994), 71 Ohio St.3d 124, 642 N.E.2d 365, to such remote and speculative connections as exist in this case further undermines a trial court's discretion.

{¶ 62} The majority relies on *Ede* to expand the "commonality of insurance interests" theory to new, *per se* horizons. The expert, Dr. Janiak, and the defendant for whom he testified, Dr. Guarnieri, did not have the same insurer (as in *Ede*); only EM Care of Alliance, Inc. shared an insurer with Dr. Janiak. Immediate Medical Services, Inc. also did not share the same insurer , but Dr. Janiak gave no testimony in its favor.

{¶ 63} The majority finds Dr. Janiak's broad, generalized background statements as to the duties of an emergency room physician to be sufficient to somehow qualify as expert testimony on the standard of care on behalf of the other emergency care defendants. Such background testimony was necessary to establish the foundation for his expert opinion on Dr. Guarnieri's care. Yet Dr. Janiak testified that he had *no* opinion whether the other defendants' conduct met the standard of care. Indeed, the plaintiff and each defendant had their own separate experts. And, in fact, each defendant physician saw the decedent at different times, with different symptoms, so the specific standards of care at each visit would differ.

{¶ 64} In addition, on voir dire, Dr. Janiak testified that he was unaware that his premiums might be affected by this case since he testified he was also unaware

of other defendants being insured by his insurer. He reaffirmed that he had no opinion as to the other physicians' failure to meet any standard of care.

{¶ 65} Against this backdrop, the trial court weighed the probative value versus the prejudicial effect of admitting the evidence and properly determined that cross-examination should not be permitted under Evid.R. 401(A) and 403. This was within the province of a trial court's discretion: to limit the scope of the cross-examination of a medical expert on issues of bias and pecuniary interest. *Calderon v. Sharkey* (1982), 70 Ohio St.2d 218, 24 O.O.3d 322, 436 N.E.2d 1008, syllabus. Absent abuse of that discretion, the trial court's decision should be affirmed. *Adams,* 62 Ohio St.2d at 157, 16 O.O.3d at 173, 404 N.E.2d at 149; *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 22, 514 N.E.2d 394, 398.

{¶ 66} Yet the majority now extends the holding of *Ede* to this case. The mere background testimony on the common issue, emergency room care by one party's expert somehow assumes center stage and opens the door to unduly prejudicial cross-examination. The discretion is removed from a trial court; under such a tenuous connection, a trial court must now allow cross-examination as a matter of law. Does this court really believe that the malpractice insurance industry is so devious that an expert for a *non-insured* can be persuaded to shade his testimony to benefit *other* defendants so as to keep his own premiums low? "Bias" means that a witness has altered or colored his or her testimony for personal reasons or self-interest. There is not a shred of evidence that this happened. In fact, the only evidence on record establishes the opposite.

{¶ 67} It is even more difficult to see how Dr. Guarnieri's verdict would be affected by such cross-examination. Dr. Janiak was Dr. Guarnieri's expert. Dr. Janiak was *already* prepared to testify in Dr. Guarnieri's favor; that is why he was retained. He was extensively cross-examined as to bias—his relationship with both the defense law firms, his hourly fees, his proclivity to testify only for physicians. The judge allowed all that, and fairly so. I fail to see how someone else's insurance

relationship would affect Dr. Janiak's own testimony for the defendant who retained him, and with whom he did *not* share a common insurer. To allow questioning of Dr. Janiak on his insurance relationship to other defendants could clearly prejudice Dr. Guarnieri's case by confusing the issues and implying that a verdict against *Dr. Guarnieri* would somehow affect Dr. Janiak's premiums from a *different* company.

{¶ 68} This was a lengthy trial with many experts. The jury verdicts in favor of Dr. Guarnieri , AIC, and IMS were unanimous. The judge listened to the voir dire of the witness, balanced the issues of relevance and prejudice, and properly excluded the evidence. Only if the exclusion of evidence amounts to a prejudicial abuse of discretion should the trial court's decision be overturned. *Calderon*, 70 Ohio St.2d at 222, 24 O.O.3d at 325, 436 N.E.2d at 1012. Such prejudice must affect a substantial right of a party. *State ex. rel. Avellone v. Lake Cty. Bd. of Commrs.* (1989), 45 Ohio St.3d 58, 62, 543 N.E.2d 478, 482. Yet the majority reverses all the above verdicts without *any* evidence that such cross-examination, if allowed, would have made any difference. Therefore, I respectfully dissent.

MOYER, C.J., concurs in the foregoing dissenting opinion.

_____