DECISION.
Plaintiffs-appellants, Givaudan Roure Flavors Corp., Robert Pellegrino and Thomas Buco, collectively "Givaudan," appeal the trial court's judgment dismissing their complaint against defendant-appellee, X-Treem Products Corp. We conclude that their arguments have merit and reverse the trial court's judgment. Because X-Treem has not filed a brief, we accept Givaudan's statement of the facts as correct. App.R. 18(C);Fuhrman v. Garrison Feist Constr. Co. (Dec. 15, 2000), Hamilton App. Nos. C-000063 and C-000080, unreported.
Givaudan is a corporation engaged in the business of formulating, producing and selling flavors. Pellegrino is Givaudan's senior vice president who conducts business in Cincinnati, and Buco is the vice president of Givaudan's beverage unit. X-Treem is a New York corporation engaged in the business of developing, producing and selling beverages.
On May 26, 1999, Givaudan filed a complaint for declaratory judgment against X-Treem. Givaudan alleged that it had produced an order for X-Treem according to certain formulas, for which X-Treem had paid in advance because of its bad credit history. At the direction of one of X-Treem's officers, Givaudan had added more citric acid to the formula. X-Treem had produced beverages using the formula, but added citric acid during production. Consequently, X-Treem had claimed to have made one or more production runs of unsatisfactory beverages for which it alleged that Givaudan was liable. Givaudan asked the court to declare that it, along with Givaudan's other officers, directors, employees and agents, was not liable to X-Treem.
Service for the complaint and summons complaint was issued by certified mail on May 27, 1999 and June 7, 1999. Givaudan subsequently filed an amended complaint on June 10, 1999. It served that complaint on Ken Marino, X-Treem's trial attorney in an action between the same parties in New York on June 10, 1999, and on X-Treem's statutory agent on June 14, 1999.
Because no answer or other responsive pleading was filed, Givaudan filed a motion for a default judgment on July 22, 1999. The trial court set the matter for a hearing on August 20, 1999. At the hearing, Marino represented X-Treem by telephone. The trial court granted X-Treem a continuance until September 10, 1999, three months after service of the amended complaint, to obtain local counsel and to file a motion for leave to file an answer.
On September 8, 1999, two days before the court-imposed deadline, X-Treem filed numerous documents, not in proper form. Marino or Anne Hovis, X-Treem's in-house counsel, neither of whom was admitted to practice in Ohio, signed these documents. They included a request by Hovis to be admitted to appear before the trial court pro hac vice. In a signed "certification" to the court, Hovis represented that she was "an attorney at law of the District of Columbia." Givaudan later filed an affidavit with an attached letter from the District of Columbia Bar showing that Hovis had been suspended since November 1998 for failure to pay dues.
The trial court held a hearing on these issues and permitted Marino to participate on behalf of X-Treem, even though he was neither admitted to practice in Ohio nor asking to be admitted pro hac vice. Marino represented that X-Treem intended to obtain local counsel, but had not yet done so, despite the continuance that the court had already allowed. Hovis admitted that she had let her admission to the District of Columbia Bar lapse, but she represented to the Court that she was validly admitted to practice in Pennsylvania. Over Givaudan's objection, the court granted Hovis's motion for admission pro hac vice.
Subsequently, Hovis filed a copy of a letter and a check that she had sent to the District of Columbia Bar for the purpose of having her membership reinstated on an inactive basis. Subsequently, Givaudan filed a motion asking the court to reconsider its decision on Hovis's admission, based on its discovery that she had been registered as a voluntarily inactive attorney in Pennsylvania since 1987. It attached to its motion a letter from the Disciplinary Board of the Supreme Court of Pennsylvania stating that she would have to petition for reinstatement to practice law in Pennsylvania. The trial court overruled the motion.
Subsequently, the trial court granted a motion to dismiss that X-Treem had previously filed based on its claim that the trial court lacked personal jurisdiction over it. The court also granted Givaudan fourteen days to file a second amended complaint. After Givaudan filed its amended complaint, the trial court "presumed personal jurisdiction," but dismissed the complaint sua sponte based on the doctrine of forum nonconveniens. This appeal followed.
Givaudan presents four assignments of error for review, which we address out of order. In its second assignment of error, it contends that the trial court erred when it granted X-Treem's motion to admit Hovis prohac vice. It argues that the trial court's admission of an out-of-state attorney who was not in good standing with any state bar was an abuse of discretion. This assignment of error is well taken.
Out-of-state lawyers have no absolute right under state or federal law to practice in Ohio. Royal Indemnity Co. v. J.C. Penney Co. (1986),27 Ohio St.3d 31, 33, 501 N.E.2d 617, 620; In re Myers (1995),107 Ohio App.3d 489, 495, 669 N.E.2d 53, 56. Attorneys admitted in other states, but not in Ohio, may request permission from an Ohio court to appear pro hac vice. Royal Indemnity Co., supra, at 33,501 N.E.2d at 619. A court may specially admit an attorney not admitted to practice in Ohio, but in good standing in another state, to represent a person in a particular case. State v. Ross (1973), 36 Ohio App.2d 185, 188,304 N.E.2d 396, 399. The decision whether to permit an attorney to appearpro hac vice lies within the discretion of the trial court. RoyalIndemnity Co., supra, at 33, 501 N.E.2d at 619-620; Myers, supra, at 495, 669 N.E.2d at 56.
The most basic and obvious requirement for the individual seeking to appear before an Ohio Court is to have a license to practice law in some other jurisdiction. In this case, the trial court granted Hovis's motion to appear pro hac vice even though she had misrepresented that she was a member of the District of Columbia Bar, after she represented that she was a member in good standing of the Pennsylvania Bar. The court ordered her to provide an affidavit to that effect, but she failed to comply with that order. Instead, she filed a copy of the check and a letter sent when she sought to be reinstated as an inactive member of the District of Columbia Bar. Givaudan then demonstrated to the court that her representation about being a member in good standing of Pennsylvania Bar was false.
Hovis not only failed to show that she was a member in good standing of any bar, she and her co-counsel also completely disregarded Ohio's Rules for the Governance of the Bar, Disciplinary Rules and Rules of Civil Procedure. Under the circumstances, the trial court's decision to allow her to appear pro hac vice was an abuse of discretion. See Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 218, 450 N.E.2d 1140, 1142. Accordingly, we sustain Givaudan's second assignment of error.
In its fourth assignment of error, Givaudan states that the trial court erred in permitting X-Treem to file an answer out of time and in denying Givaudan's motion for default judgment. It argues that the trial court abused its discretion in allowing X-Treem to file its answer out of time without a showing of excusable neglect. This assignment of error is well taken.
If the defendant fails to file an answer within twenty-eight days after service of the summons and complaint as required by Civ.R. 12(A)(1) or otherwise fails to appear, the trial court may enter a default judgment against the defendant. Civ.R. 55(A); Davis v. Immediate MedicalServices, Inc. (1997), 80 Ohio St.3d 10, 14, 684 N.E.2d 292, 296. Civ.R. 6(B) allows for an extension of time to file a late pleading, but only upon the filing of a motion and a showing of excusable neglect.Davis, supra, at 14, 684 N.E.2d at 296; Miller v. Lint (1980),62 Ohio St.2d 209, 214, 404 N.E.2d 752, 755.
When determining whether neglect in failing to file a timely answer is excusable or inexcusable, the trial court must consider all of the surrounding facts and circumstances. Griffey v. Rajan (1987),33 Ohio St.3d 75, 79, 514 N.E.2d 1122, 1126; Kenwood Office Associatesv. Maryland Regional Impotence Ctr., Inc. (Dec. 26, 1997), Hamilton App. No. C-970049, unreported. Inexcusable neglect is conduct that falls substantially below what is reasonable under the circumstances. State exrel. Weiss v. Indus. Comm. (1992), 65 Ohio St.3d 470, 473, 605 N.E.2d 37,39; Kenwood Office Associates, supra. While generally the decision whether neglect is excusable or inexcusable lies within the trial court's discretion, that discretion is not unlimited. The defendant must make some affirmative showing of excusable neglect before obtaining an extension of time to answer the complaint. Davis, supra, at 14,684 N.E.2d at 296; Miller, supra, at 214, 404 N.E.2d at 755.
In this case, X-Treem made absolutely no showing of excusable neglect. It made its "appearance" two months out of time through a New Jersey attorney who did not represent X-Treem in the case and through the filing of numerous documents that did not meet the requirements of the Civil Rules. See Civ.R. 7; Perez v. Bush (C.P. 1993), 63 Ohio Misc.2d 423,427, 637 N.E.2d 192, 194-195. Later, X-Treem filed a motion to dismiss, signed by Hovis, a person who was not validly admitted to any bar at the time of her signature. See Civ.R. 11. X-Treem's conduct in failing to comply at all with the Civil Rules fell far below what was reasonable under the circumstances and should have subjected it to a default judgment. See Davis, supra, at 14-15, 684 N.E.2d at 296-297; Miller,supra, at 214, 404 N.E.2d at 755; Kenwood Office Associates, supra.
Consequently, the trial court abused its discretion in granting X-Treem leave to answer or otherwise plead and in denying Givaudan's motion for default judgment. See Turner v. Alexander (1995), 107 Ohio App.3d 853,858, 669 N.E.2d 565, 568. We sustain Givaudan's fourth assignment of error, reverse the judgment of the trial court and remand the case with instructions for the trial court to enter a default judgment in Givaudan's favor. Givaudan's other two assignments of error are moot, and we, therefore, decline to address them. See App.R.12(A)(1)(c).
 ____________________________ Doan, P.J., Gorman and Shannon, JJ.
Raymond E. Shannon, retired, from the First Appellate District, sitting by assignment.