OPINION
{¶ 1} Plaintiff-appellant, Brian L. Zimmerman, guardian of Brandon J. Hahn, appeals from two Stark County Common Pleas Court decisions, one granting a motion to vacate default judgment in favor of defendant-appellee, Robert Hamilton, III, M.D., and one granting a motion in limine to preclude appellant from engaging in a particular line of questioning with appellee.
 {¶ 2} On May 30, 1993, appellee delivered Rosetta Hahn's baby. During delivery, appellee discovered that the child had a shoulder dystocia. A shoulder dystocia occurs after the baby's head has been delivered and its shoulder becomes stuck under the pubic bone of the mother. At trial, appellant contended that appellee's reaction to discovering the shoulder dystocia was to pull the remainder of the child's body out of Hahn's womb with the assistance of forceps. Appellee denied ever using forceps during the delivery. Both parties agreed that using forceps to deliver a baby with a shoulder dystocia would be below the standard of care to be used by obstetricians.
 {¶ 3} Upon delivery, the medical staff at Timken Mercy noted that the child's right arm was blue and cold. Shortly thereafter, he was taken to another hospital for further observation. What happened immediately after this is not clear from the record; however, at approximately three months of age, the child was diagnosed with cerebral palsy.
 {¶ 4} On August 23, 1999, appellant filed a complaint alleging medical negligence. Appellee received the complaint and summons on August 25, and his office staff faxed both documents to Sirak-Moore Insurance Agency, Inc., appellee's local insurance agent, on August 27. Sirak informed appellee's office staff that it received the documents and would forward them to appellee's professional liability insurance carrier, Kentucky Medical Insurance Company (Kentucky Medical).
 {¶ 5} On August 30, 1999, Sirak faxed the complaint and summons to J.D. Preston, a sales agent for Kentucky Medical, located in Cincinnati, Ohio. On August 31, Preston faxed the documents to Kentucky Medical, located in Louisville, Kentucky. After August 31, all activity in the suit on behalf of appellee ceased until October 11. Appellee filed no answer or other pleading at this time.
 {¶ 6} On October 7, 1999, appellant moved for a default judgment due to appellee's lack of response. The court granted default judgment to appellant on October 8. The next day, Saturday, October 9, appellee received via mail a copy of appellant's motion for default judgment. The following Monday morning, October 11, appellee's office manager faxed appellant's motion for default judgment to Sirak-Moore. In accordance with the prior chain of communication, Sirak-Moore faxed the motion to Preston. Preston then faxed the motion to Kentucky Medical. All of these persons received copies of appellant's motion for default judgment on October 11, 1999.
 {¶ 7} On October 12, 1999, appellee filed his first pleading, a memo opposing the motion for default judgment that was granted four days prior. On October 14, appellee filed a motion to vacate default judgment and for leave to file an answer instanter. Appellee included his own affidavit to support his motion. On October 22, appellee supplemented his previously filed motion with the affidavits of Tiwatha Murdock, the employee at Sirak-Moore who handled the transmission of the complaint; J.D. Preston; and Charles Fischesser, Vice President of Claims of Kentucky Medical. Murdock and Preston swore to receiving the complaint and sending it to the proper party. Fischesser swore that his office never received notice of the lawsuit until default judgment was granted.
 {¶ 8} On October 29, 1999, appellee filed an additional affidavit of Preston, this one containing a crucial fact that had not been discovered at the time the previous affidavits were filed. Preston supplemented his prior affidavit stating that the transmission record for the fax he sent read "NG" on the line that says "Result." Preston further stated that on October 25, he looked at the form more closely, discovered the "NG" on the side and checked the instruction manual for the fax machine. Only then, Preston said, did he realize that "NG" on the transmission record stands for "No Good," which meant that the fax did not properly transmit. Preston included a copy of the transmission record and the explanatory page from the instruction manual.
 {¶ 9} The trial court held a hearing on the motion to vacate on November 1, 1999. It granted the motion two days later. The court reasoned that the evidence presented on behalf of appellee was credible and did not establish a disregard for the judicial system, but rather it demonstrated inadvertence, mistake, and excusable neglect and was thus excusable under Civ.R. 60(B).
 {¶ 10} The case ultimately proceeded to trial in October, 2002. The jury returned a verdict in favor of appellee. Appellant filed a timely notice of appeal on October 21, 2002.
 {¶ 11} Appellant raises two assignments of error, the first of which states:
 {¶ 12} "The trial court abused its discretion by granting defendant's motion to vacate default judgment where defendant failed to demonstrate excusable neglect."
 {¶ 13} When the defendant to an action fails to plead or otherwise defend the action, default judgment may be granted pursuant to Civ.R. 55(A). Davis v. Immediate Medical Services,Inc. (1997), 80 Ohio St.3d 10, 14. However, a defendant may seek relief from default judgment pursuant to Civ.R. 60(B). The Ohio Supreme Court set out the controlling test for Civ.R. 60(B) motions in GTE Automatic Elec., Inc. v. Arc Industries, Inc.
(1976), 47 Ohio St.2d 146. The court stated:
 {¶ 14} "To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." Id. at paragraph two of the syllabus.
 {¶ 15} The decision of whether to vacate a judgment rests within the trial court's discretion and will not be reversed absent an abuse of discretion. Doddridge v. Fitzpatrick (1978),53 Ohio St.2d 9, 12. An abuse of discretion is more than simply an error of law, but rather implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 16} Appellant does not contest the affirmative findings as to the first and third prongs of the GTE test. Indeed, it is clear that appellee met these two requirements. Appellee had a meritorious defense to present, as he contended that he did not act negligently during Brandon's birth. And appellee's motion was made in a timely manner, as it was filed within days of the grant of default judgment. Rather, it is the second prong of the GTE
test, whether appellee is entitled to relief under one of the grounds listed in Civ.R. 60(B)(1) through (5), that appellant argues appellee did not affirmatively demonstrate.
 {¶ 17} The Ohio Supreme Court has advised, though cautiously, that where a defendant presents a meritorious defense in a timely manner, any doubt on the categorization of neglect should be resolved in favor of the motion to set aside the judgment so that cases can be decided on their merits. WFMJ Television, Inc. v.AT T Federal Systems CSC, 7th Dist. No. 01-CA-69, 2002-Ohio-3013, at ¶ 21, citing GTE, 47 Ohio St.2d at 151.
 {¶ 18} Appellee claimed that he was entitled to relief under Civ.R. 60(B)(1), which provides that the court may grant relief to a party based on mistake, inadvertence, surprise or excusable neglect. As stated above, appellee failed to respond to the complaint within the allotted time due to his insurance agent's failure to realize that the fax transmission of the complaint to insurance headquarters was "no good." The question, therefore, is whether ignorance of the operational procedures for an office machine constitutes excusable neglect.
 {¶ 19} As it was appellee's insurance carrier who ultimately failed to properly respond to the compliant, it should be noted that the neglect of an insurance company in failing to file an answer is imputable to a defendant. Griffey v. Rajan (1987),33 Ohio St.3d 75, 78. It should be further noted that, due to this causal nexus, the conduct of the insured and the insurer must be examined together to determine whether the offending conduct is excusable or inexcusable neglect. Id.
 {¶ 20} The Ohio Supreme Court has yet to develop a definitive definition of excusable neglect. However, it has described it in the negative stating, "the inaction of a defendant is not `excusable neglect' if it can be labeled as a `complete disregard for the judicial system.'" Kay v. Marc Glassman, Inc. (1996),76 Ohio St.3d 18, 20, quoting GTE Automatic Elec., Inc.,47 Ohio St.2d at 153. The court has further explained:
 {¶ 21} "A trial court does not abuse its discretion in overruling a Civ.R. 60(B)(1) motion for relief from a default judgment on the grounds of excusable neglect, if it is evident from all of the facts and circumstances in the case that the conduct of the defendant, combined with the conduct of those persons whose conduct is imputable to the defendant, exhibited a disregard for the judicial system and the rights of the plaintiff." Griffey, 33 Ohio St.3d at the syllabus.
 {¶ 22} Additionally, this court has noted, "[a] denial of a Civ.R. 60(B) motion serves justice when there has been an intentional disregard for the legal process and a lack of good faith by the neglectful party." Kebler v. Prudential Property Cas. Ins. Co., 5th Dist. No. CT2002-0036, 2003-Ohio-2145, at ¶ 49.
 {¶ 23} The trial court did not abuse its discretion in finding that excusable neglect existed in this case. It is reasonable to conclude from the record that appellee, and those acting on his behalf, did not show disregard for the judicial system or appellant's rights. The trial court could have reasonably concluded that appellee, and those acting on his behalf, demonstrated regard for the judicial system in that they acted immediately upon learning of the default judgment granted against appellee, relaying the information as soon as it was received. That message was relayed upon the same chain of communication used to inform one another of the initial complaint, only this time it was without defect. While it is neglectful to not apprise oneself of what the coded messages on the transmission slips from your fax machine denote, it was not unreasonable, arbitrary, or capricious for the trial court to find that this neglect was excusable.
 {¶ 24} Appellant argues that the facts of the case sub judice are parallel to several cases where the defendants' conduct was found to be inexcusable, thus urging this court to come to the same conclusion. However, the facts do not lend themselves to comparison.
 {¶ 25} For instance, appellant argues, this case can be compared to Griffey, where the defendant Rajan was out of the country when a medical malpractice complaint was served at his office. When informed of the complaint, Rajan told a secretary to call the insurance carrier, which she did. She was told that a particular person would be handling the matter and would return the call shortly. The call was never returned. Subsequently, no one contacted the insurance company. It was not until default judgment was granted and a judgment on damages was issued that Rajan filed an answer. Fifty-one days had passed between the deadline for filing an answer and the day Rajan filed his motion for relief, which was denied.
 {¶ 26} In response to Rajan's appeal of the denial, the court reiterated the warning it issued in Colley v. Bazell (1980),64 Ohio St.2d 243, where it stated, "`even though a defendant has promptly notified an insurance company of the filing of the lawsuit, his neglect in failing to independently determinewhether an answer has been filed on his behalf may well changefrom "excusable" to "inexcusable" upon the passage of time, without regard to the one year provision regulating the timeliness of the motion.'" (Emphasis sic.) Griffey,33 Ohio St.3d at 79, quoting Colley, 64 Ohio St.2d at 249.
 {¶ 27} In the present case, appellee filed his first pleading four days after default judgment was granted. Such a brief period of time does not render a change in the categorization of the conduct from excusable to inexcusable. Rather, the facts of the present case more readily lend themselves to comparison to the facts of Colley, where the defendant, Bazell, was served with a complaint for legal malpractice. Upon learning of the lawsuit, Bazell informed his insurance carrier and sent the information to the carrier via mail. However, the papers were delayed in the mail and did not arrive until the day the answer was due.
 {¶ 28} In denying relief from the default judgment, the trial court found that Bazell's failure to independently track the conduct of his insurance carrier to make certain that an answer was filed did not constitute excusable neglect. The Supreme Court disagreed, explaining that in defending suits where he has liability insurance, a defendant's failure to file an answer or ensure that his carrier filed an answer may constitute excusable neglect depending on the facts and circumstances of the case.Colley, 64 Ohio St.2d at paragraph two of the syllabus. The court explained:
 {¶ 29} "That inquiry must of necessity take into consideration all the surrounding facts and circumstances. Among such circumstances is whether the defendant promptly notified his carrier of the litigation. A second circumstance is the lapse of time between the last day for the filing of a timely answer and the granting of the default judgment. A third circumstance is the amount of the judgment granted. A fourth, but not decisive, circumstance is the experience and understanding of the defendant with respect to litigation matters." Id. at 249.
 {¶ 30} Applying those considerations to the facts of this case, the following is revealed: (1) appellee immediately notified his carrier of the litigation, (2) default judgment was granted just two weeks after the last day to timely file an answer, and (3) the amount of judgment had not yet been determined. The fourth factor, termed not decisive, is not readily discernable from the record.
 {¶ 31} Given the above, we cannot conclude that the trial court abused its discretion in granting appellee's Civ.R. 60(B) motion. Therefore, appellant's first assignment of error is without merit.
 {¶ 32} Appellant's second assignment of error states:
 {¶ 33} "The trial court abused its discretion in prohibiting plaintiff from inquiring about defendant's failure of Three Board Certification Examinations for purposes of impeaching defendant's qualifications as an expert witness and to counter defendant's misrepresentation that he chose not to pursue Board Certification."
 {¶ 34} In the present case, appellee filed a motion in limine requesting, in part, that the court prohibit appellant from introducing testimony that appellee failed the board certification test in obstetrics and gynecology "two or three times." Over appellant's protests, the court granted the motion. Thereafter, appellant never re-pursued the introduction of the evidence during the trial.
 {¶ 35} A motion in limine seeks only a preliminary ruling. Therefore, at trial, the proponent of the evidence must actually move the court to admit the evidence, whereas the party opposing the evidence must object at that time in order to properly preserve the question for appeal. Krotine v. Neer, 10th Dist. No. 02AP-121, 2002-Ohio-7019, at ¶ 10; State v. Maurer (1984),15 Ohio St.3d 239, 259-260. "`[I]t is incumbent upon a [party] who has been temporarily restricted from introducing evidence by virtue of a motion in limine, to seek the introduction of the evidence by proffer or otherwise in order to enable the court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal.'"Garrett v. Sandusky (1994), 68 Ohio St.3d 139, 141, quotingState v. Grubb (1986), 28 Ohio St.3d 199, paragraph two of the syllabus.
 {¶ 36} Appellant now argues that the court improperly deprived the jury of information necessary to evaluate appellee's qualifications as an expert and the reliability of his opinions. Appellee contends that appellant waived the issue for the purposes of appeal by failing to seek introduction of the evidence during the trial. In his reply brief, appellant addresses the issue as follows:
 {¶ 37} "Given the court's prior ruling, Appellants withdrew the objection contingent upon whether the issue would be raised by defendant's counsel upon direct examination. In fact, during his direct examination, his board certification status was not addressed. Upon cross-examination, appellant was not going to question the defendant on his failure to pass his board certification as the court had previously forbidden such an inquiry. Accordingly, if Appellants had solicited testimony from Appellate (sic) regarding his three failures, Appellants would have been in contempt of court. Therefore, Appellants were not required to renew their request or objection when the trial court had already issued its ruling."
 {¶ 38} This argument disregards the above stated, well-established law on motions in limine. There is nothing in the ruling of the court to infer the grant of the motion in limine was anything more than a preliminary ruling that appellant needed to raise again during trial. A motion in limine excluding evidence does not relieve the burden on counsel to re-raise the issue when it is ripe for consideration during trial. Grubb,28 Ohio St.3d at 202.
 {¶ 39} Accordingly, appellant's second assignment of error is without merit.
 {¶ 40} For the reasons stated above, the trial court's judgment is hereby affirmed.