DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Thomas W. Watkins, has appealed from the decision of the Summit County Court of Common Pleas which granted summary judgment to Appellee, Jimmy Williams. This Court affirms in part, reverses in part, and remands.
 I {¶ 2} On August 30, 1991, a jury found Appellee guilty of rape, and a trial court sentenced him to life in prison. Almost ten years later, in 2000, Appellant was appointed to represent Appellee at a sexual predator hearing. At that time, Appellant noted certain discrepancies in the evidence which lead him to believe Appellee's protestations of innocence. When Appellant finally located the victim, she recanted her original testimony. The trial court released Appellee from prison on February 14, 2001.
 {¶ 3} Following his release from incarceration, Appellee hired Appellant to represent him in a wrongful imprisonment suit. The two initially entered into an oral agreement regarding compensation for Appellant's service as Appellee's counsel. The final written agreement stated that Appellant was entitled to a 25% contingency fee on the final award or $200 per hour if Appellee should dismiss Appellant. Both Appellee and Appellant signed this document. Appellee now insists that he did not read or understand the agreement, and that Appellant represented that the document was unimportant.
 {¶ 4} Appellant filed a suit in the Summit County Common Pleas Court and obtained a declaration that Appellee was a wrongfully imprisoned individual. At that time, the trial court judge informed Appellee that he had the right to file suit against the State of Ohio in the Court of Claims in order to receive statutory compensation for his wrongful imprisonment. The court further instructed Appellee that he had the right to be represented in the Court of Claims by the attorney of his choice. Appellee apparently chose to continue with Appellant's representation at that time.
 {¶ 5} On October 7, 2002, Appellant filed suit on behalf of Appellee in the Court of Claims to collect statutory compensation for Appellee's wrongful imprisonment. During the months that followed, some sort of disagreement arose between Appellee and Appellant as to why Appellee had not yet received his money from the State. Appellant had been negotiating with the attorney general's office over the amount of compensation due and was under the impression that settlement of Appellee's claim for approximately $490,425 was imminent. On May 9, 2003, before any formal agreement or understanding was reached concerning settlement, Appellee terminated Appellant as his counsel, and hired new counsel to complete his representation in the Court of Claims. Appellee's new counsel eventually settled the matter for $750,000.
 {¶ 6} In addition to this amount, the Court of Claims also awarded attorney's fees to both Appellant and Appellee's new counsel. Appellant submitted to the court a list of hours expended, and the court reimbursed him $200 per hour plus expenses, a total of $49,240.[1] Appellant attempted to submit a supplemental bill for phone calls and other meetings with Appellee not listed in the original bill, but the Court of Claims denied compensation for those additional hours. The court granted fees in the amount of $35,343.85 to Appellee's new counsel for work completed on the Court of Claims case.
 {¶ 7} Following the settlement in the Court of Claims, Appellant filed suit against Appellee in the Court of Common Pleas to recover fees due and payable on the contingency contract. Appellant also moved for a temporary restraining order and preliminary injunction requiring the State to pay the disputed portion of Appellee's settlement into an escrow account pending the outcome of the contract dispute.
 {¶ 8} Consequent to an August 13, 2002 hearing, at which neither Appellee nor his representative appeared, the court granted the preliminary injunction. Appellee then filed a Civ.R. 60(B) motion for relief from the preliminary injunction, claiming that he was not properly served notice of the suit or hearing, and a subsequent motion for reconsideration and supplemental request for Civ.R. 60(B) relief based upon the same lack of service grounds.[2] In addition, on October 2, 2003, Appellee filed a motion to dismiss the complaint under Civ.R. 12(B)(6).
 {¶ 9} Appellant moved to strike Appellee's motion to dismiss as being submitted without leave of court and outside of the twenty-eight day time period allotted for submission of a response to the complaint. He also requested default judgment against Appellee on his breach of contract claim.
 {¶ 10} The court eventually denied Appellee's numerous motions, finding that Appellee was properly served on August 19, 2003.[3] The court also denied Appellant's motion to strike and for default judgment, finding that default judgment was improper because Appellee had made numerous appearances indicating conclusively that he was challenging the merits of the complaint.[4]
 {¶ 11} On December 2, 2003, Appellee filed an answer and counterclaims.
 {¶ 12} During the pendancy of the suit, the trial court set various discovery deadlines, including a deadline for the filing of notice of expert witnesses. When it became apparent that all discovery would not be concluded within the timeframe, Appellant moved for an extension of all discovery deadlines. The court granted the motion, and permitted Appellee to file a supplemental list of expert witnesses beyond the original deadline. Appellant objected to the filing of Appellee's supplemental expert list, arguing that acceptance of the new list would not give him enough time to depose all of the new experts within the remaining discovery period. The trial court denied Appellant's motion to exclude the supplemental experts.
 {¶ 13} Both parties filed motions for summary judgment. On June 7, 2004, the trial court granted summary judgment to Appellee on the breach of contract claim. The trial court found that Appellant had been fully compensated by the Court of Claims at the $200 per hour rate recited in the contract, and that he was not entitled to 25% of the final settlement amount. The trial court also awarded summary judgment to Appellant on all but one of Appellant's counterclaims. The trial court scheduled the remaining fraud counterclaim for trial, but sua sponte granted summary judgment to Appellant on that claim prior to the set trial date.
 {¶ 14} Appellant has timely appealed, asserting three assignments of error.
 II Assignment of Error Number One
"The Trial Court Erred to the Prejudice of Appellant in allowing [Appellee] to file his Motion to Dismiss Beyond the Twenty-Eight Day Timeframe of Civ.R. 12 Absent Leave or a Motion And without (sic) a Showing of Excusable Negelct."
 {¶ 15} In his first assignment of error, Appellant has asserted that the trial court erred in allowing Appellee to file a Civ.R. 12 motion to dismiss following the twenty-eight day time limit after the filing of the complaint. Specifically, Appellant has argued that the trial court should not have considered any response by Appellee past the twenty-eight day time frame without a showing of excusable neglect on the part of Appellee. Appellant has contended that the trial court should have granted him a default judgment against Appellee for Appellee's failure to timely respond to the original complaint. We agree in part with Appellant's contentions.
 {¶ 16} This court reviews a trial court's grant of an extension of time to plead under an abuse of discretion standard. Davis v. ImmediateMed. Serv., Inc. (1997), 80 Ohio St.3d 10, 14. Civ.R. 12(A)(1) requires that a party file his answer within twenty-eight days after service of the complaint. The Civil Rules permit extension of this time period in two manners. First, a party may move for an extension of time under Civ.R. 6. Otherwise a party may receive an extension of time in which to file his answer only by "service of a motion permitted under this rule,
[Civ.R. 12.]" (Emphasis added.) Civ.R. 12(A)(2). In other words, only a motion for an extension of time under Civ.R. 6 or a Civ.R. 12 motion can extend the answer deadline. Any other motion might be considered an "appearance" before the trial court, but it cannot extend the deadline.
 {¶ 17} In this case, Appellee received service of Appellant's complaint on August 19, 2003.[5] Appellee filed a Civ.R. 12(B)(6) motion to dismiss on October 2, 2003, sixteen days after passage of the September 16, 2003, deadline. Appellant then filed a motion to strike Appellee's untimely Civ.R. 12(B)(6) motion coupled with a motion for default judgment. The trial court denied Appellant's motion to strike and motion for default judgment on November 26, 2003, finding, in essence, that Appellee's Civ.R. 60(B) motion extended the applicable deadline for filing an answer or responsive pleading. Such a finding is incorrect. As noted above, a Civ.R. 60(B) motion cannot alter the proscribed time period in which a party has to answer or otherwise properly plead under Civ.R. 12.[6]
 {¶ 18} Where a party fails to file a proper Civ.R. 12 motion or request for an extension of time before the original deadline, the trial court may grant an extension of time only upon motion of the party united with a showing of excusable neglect. Civ.R. 6(B). See, also, Davis,80 Ohio St.3d at 14; Miller v. Lint (1980), 62 Ohio St.2d 209, 214. It is an abuse of discretion for a trial court to permit filing of a late answer or responsive pleading if a party fails to (1) request leave of court to file an untimely answer or responsive pleading and (2) make the required showing of excusable neglect. Miller, 62 Ohio St.2d at 214. This Court finds that the trial court abused its discretion by failing to require Appellee to petition the court for permission to file an untimely responsive pleading and make the requisite showing of excusable neglect.[7]
 {¶ 19} We find the trial court should have struck Appellee's untimley Civ.R. 12(B)(6) motion and commenced with the required default judgment procedure.[8] Accordingly, Appellant's first assignment of error has merit.
 Assignment of Error Number Two
"The Trial Court Erred to the Prejudice of Appellant in finding that Appellee did not Breach the Agreement and Quantum Meruit Applied after Appellant Fully Performed under the Contingency fee Contract."
 {¶ 20} In his second assignment of error, Appellant has essentially argued that the trial court erred in granting summary judgment to Appellee. Appellant has opined that he fulfilled the entirety of his contingency contract with Appellant such that he was entitled to 25% of the total recovery following Appellee's wrongful imprisonment claim in the Court of Claims. Appellant has further alleged that material issues of fact remain regarding the interpretation of a contract which he claims is ambiguous. We agree.
 {¶ 21} Summary judgment is proper under Civ.R. 56(C) if:
"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
This court reviews the trial court's grant of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Any doubt must be resolved in the favor of the non-moving party. Viock v.Stowe-Woodward Co. (1983), 13 Ohio App.3d 7, 12, certiorari denied (1986), 479 U.S. 948, 107 S.Ct. 433, 93 L.Ed.2d 383.
 {¶ 22} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and is to identify portions of the record that demonstrate absence of genuine issues of material fact as to an essential element of the non-moving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The burden then shifts to the non-moving party to offer "specific facts showing that there is a genuine issue for trial." Id. See, also, Civ.R. 56(E). The non-moving party may not rest on the mere allegations and denials in the pleadings, but must submit some evidentiary material showing a genuine dispute over the material facts. Dresher, 75 Ohio St.3d at 293.
 {¶ 23} The interpretation of written contracts, including any assessment as to whether a contract is ambiguous, is a question of law subject to de novo review on appeal. Long Beach Assn., Inc. v. Jones
(1998), 82 Ohio St.3d 574, 576. If a contract is unambiguous, its interpretation is a matter of law unaccompanied by the need for factual determinations. Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, 246. Where an ambiguity exists, however, interpretation of a contract involves both factual and legal questions.Four Star Service, Inc. v. Akron (Oct. 27, 1999), 9th Dist. No. 19124, at 10. Where that ambiguity is coupled with a material issue of fact supported by proper evidentiary materials, summary judgment is improper.Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.
(1984), 15 Ohio St.3d 321, 323-24; Four Star Service, supra, at 10.
 {¶ 24} Contract terms are ambiguous only if they can be reasonably understood in more than one sense. Mills Creeks Condominium Assoc. v.Kleinholz (Oct. 2, 1991), 9th Dist. No. 91CA005025, at 2-3. "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument."Alexander, 53 Ohio St.2d 241, at paragraph two of the syllabus. Where the meaning of a term or phrase cannot be determined solely from the four corners of the document, a factual determination may be necessary to resolve the ambiguity. Blon v. Bank One (Oct. 29, 1986), 9th Dist. No. 12580, at 9, citing Hallet Davis Piano Co. v. Starr Piano Co. (1911),85 Ohio St. 196.
 {¶ 25} The contract in this case reads:
"I, [Appellee], retain [Appellant] for my representative in a wrongful imprisonment case against the State of Ohio. I am entering this agreement of my own free will and agree to compensate or allow him to be compensated at 25% CONTIGENCY [sic] of the final award representing attorney fees inclusive and reimburse him for any expense he incurs on my behalf. Should I dismiss him in the process and hire another attorney he shall receive compensation for time expended on my behalf in the amount of $200 an hour plus any expenses incurred since 2/24/2001 not to exceed the 25% limit as set forth above."
 {¶ 26} It is undisputed that a wrongful imprisonment claim must occur through two separate proceedings, one in the court of common pleas and the second in the Court of Claims. The document clearly states that Appellant will represent Appellee in "a wrongful imprisonment case[.]" (Emphasis added.) The plain meaning of this phrase is that Appellant has committed only to one lawsuit, and not the two that are necessary to complete the process of a wrongful imprisonment claim. Appellant further persuasively argues this interpretation by pointing out that the common pleas case is the only one which involves the type of risk proper for a contingency fee agreement. Following the common pleas action, the trial court essentially awarded Appellee his "ticket" to claim statutorily guaranteed damages in the Court of Claims. The risk of an adverse judgment had been removed, and the declaration of wrongful imprisonment entitled Appellee to a minimum of $40,330 per year of wrongful imprisonment, a final settlement of at least $403,300 in Appellee's case.[9] See R.C. 2743.48(E)(2)(b).
 {¶ 27} The extent of representation covered by the contract, however, is rendered ambiguous when, later in the contract, Appellant also agrees to certain alternative compensation if he is dismissed "in the process[.]" The word "process" indicates the possibility of including both the common pleas and Court of Claims cases. An ambiguity exists which cannot be determined without reference to evidence elucidating the intent of the parties. Both parties have presented evidence on summary judgment which supports their respective interpretation of the contract as applying either to only the common pleas court case or the entire wrongful imprisonment process. Given this remaining question of material fact, this Court finds that summary judgment is improper.
 {¶ 28} This Court also notes that additional questions may have yet to be answered in regard to the terms of the contract. For example, does any payment by the State of Ohio satisfy Appellee's obligation to pay Appellant under the contract or is Appellee's obligation independent of any payment by the State?[10] If a jury finds that the contract did cover both lawsuits, rendering the contingency fee inapplicable, the contract also leaves unanswered the question of whether Appellee is contractually bound to pay Appellant $200 per hour in quantum meruit for hours expended in non-legal pursuits, such as taking Appellee to get food stamps or entertaining countless hours of telephone calls by Appellee over the two year time period regarding non-legal concerns.[11]
 {¶ 29} After reviewing the contract in question, and considering the record properly before the court related to summary judgment, we find that the trial court erred in granting summary judgment to Appellee on Appellant's breach of contract claim. Accordingly, Appellant's second assignment of error is well taken.
 Assignment of Error Number Three
"The Trial Court Abused its Discretion in Allowing Appellee to File New Experts Beyond the Date set by Order."
 {¶ 30} In his third assignment of error, Appellant has asserted that the trial court erred in permitting Appellee to file a list of new experts beyond the set deadline.[12] Specifically, Appellant has argued that the trial court erred in interpreting his motion to extend discovery to include all discovery deadlines, including the filing of expert witnesses. Appellant has further asserted that permitting Appellee to file a list including five new expert witnesses only three weeks before the end of the discovery period greatly prejudiced him. Appellant has alleged that three weeks was not long enough to depose all of the new experts. We disagree.
 {¶ 31} "[A]bsent an abuse of discretion, an appellate court must affirm a trial court's disposition of discovery issues." State ex rel.The V Cos. v. Marshall (1998), 81 Ohio St.3d 467, 469. An abuse of discretion is more than a mere error in law or judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621. When applying the abuse of discretion standard, we may not substitute our judgment for that of the trial court. Id.
 {¶ 32} The trial court originally set a February 9, 2004, deadline for the filing of Appellee's expert witness list. Appellee timely filed a list of experts. Following the expiration of that deadline, however, Appellant filed a motion to extend discovery. While Appellant's motion specifically addressed extension of the general discovery cutoff date of March 16, 2004, necessary to accommodate an April 6, 2004, deposition, it expressly requested "a one month (or longer) extension of all deadlines." (Emphasis added.) On March 23, 2004, the trial court granted Appellant's motion, stating that "discovery shall be completed on or before April 16, 2004." The trial court also stated that no further extensions of the discovery period would be granted. Appellee filed his supplemental list of expert witnesses the day after the court extended discovery deadlines.
 {¶ 33} Appellant filed a motion to exclude the additional expert witnesses on three separate grounds. First, Appellant argued that he had never requested an extension of the deadline for expert witnesses. Second, he requested only a month extension on "all deadlines[,]" which would render untimely Appellee's supplemental notice of experts.[13]
Finally, Appellant asserted that allowing the additional experts would cause him substantial prejudice. "[W]ith the April 16, 2004 discovery cut-off quickly approaching, [Appellant] does not have time to depose any of the new experts, let alone all of them, and otherwise prepare for his testimony."
 {¶ 34} The trial court disagreed:
"[Appellant] cannot have his cake and eat it too. On March 10, 2004 [Appellant] specifically moved the Court for `a one month (or longer) extension of all deadlines'. The Court granted this request on March 23, 2004. [Appellant] has no right to now argue that the extension should not apply to identification of [Appellee's] experts." (Emphasis sic.)
Furthermore, the trial court found that the available three weeks of discovery remaining at the time Appellee filed his supplemental expert list permitted Appellant to depose the additional experts such that Appellant need not be prejudiced. The Court did not address the fact that the discovery period had expired prior to issuance of its decision on the matter.
 {¶ 35} After reviewing the record before us, we cannot find that the trial court abused its discretion in refusing to exclude Appellee's additional experts. The court, in essence, granted Appellant's request to extend all deadlines by a month, or longer, by extending every discovery deadline, including the one for filing of Appellee's expert witness list, to April 16, 2004. It is inapposite for Appellant to now argue that the court's compliance with his request constitutes an abuse of discretion. Further, Appellant did have three weeks in which to attempt to depose those experts, and apparently failed to make any effort to do so. He, admittedly, did not attempt to depose any of the new experts within that time period. We can only speculate as to whether he was actually prejudiced by the court's decision in this matter. Accordingly, Appellant's third assignment of error lacks merit.
 III {¶ 36} Appellant's first and second assignments of error are sustained. Appellant's third assignment of error is overruled. The judgment of the Summit County Court of Common Pleas as to the failure to strike Appellee's Civ.R. 12(B)(6) motion is reversed. The grant of summary judgment in favor of Appellee on Appellant's breach of contract claim is reversed. The cause is remanded to the trial court for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to both parties equally.
Exceptions.
Boyle, J. concur.
[1] The parties disagree as to whether the itemization of hours covered both the civil and Court of Claims cases or merely the civil suit.
[2] An appointed process server certified that she personally served Appellee with the complaint and notice of the preliminary injunction hearing on August 8, 2003. Appellee denied service was accomplished on that date.
[3] The court permitted regular mail service on August 19, 2004, though Appellee challenged the propriety of that service. In spite of an additional affidavit by the process server positively identifying Appellee as the man served on August 8, 2004, the trial court made no determination as to whether service was accomplished at that time. The propriety of either the earlier service or a later attempt at personal service on September 5, 2004, however, would not affect the outcome of this appeal.
[4] These appearances include the original Civ.R. 60(B) motion to vacate, the Motion for Reconsideration and Supplemental Request for Civ.R. 60(B) relief, and unverifiable amounts of contact through hearings and telephone conferences.
[5] Appellee contests this, but has not filed a cross-appeal on this issue. As such, we defer to the trial court's determination that service was received on this date.
[6] Appellant has actually argued that the filing of a Civ.R. 60(B) motion in relation to a non-final, preliminary injunction is a nullity which can never trigger extension of the twenty-eight day time frame. We find it unnecessary to address this particular argument.
[7] As the original Civ.R. 12(B) motion was untimely, this same rule applies to the December 2, 2003, answer in this case.
[8] We make no comment as to whether default judgment itself would be proper in this case. We merely find that the trial court should have struck the untimely Civ.R. 12(B)(6) motion and granted the requisite default hearing in this matter. On remand, the only information relevant to the grant or denial of default judgment is that of record prior to the filing of the motion for default.
[9] The risk of non-payment of attorney's fees also ends with the wrongful imprisonment declaration in the common pleas court. The Court of Claims must enter an award of attorney's fees for all hours expended representing a wrongfully imprisoned party in the Court of Claims under R.C. 2743.48(F)(2). The fees for the Court of Claims case are then paid directly by the State of Ohio to the attorney. See R.C. 2743.48(G).
[10] Evidence in the record indicates that any payment by the State was intended to be in addition to the contingency or per hour fee. As such, Appellee may still be liable under the contract for the quantum meruit amount regardless of any payment made by the State.
[11] The contract specifically requires Appellee to compensate Appellant "for time expended on [Appellee's] behalf" should Appellee dismiss him. The record reflects that Appellant submitted a supplemental bill to the Court of Claims itemizing the hours he spent on various types of non-legal activity. The Court of Claims indicated that it could not award attorney's fees for these non-legal hours, and that it lacked jurisdiction to determine whether Appellant was entitled to additional fees under a private agreement with Appellee.
[12] Given our determination as to Appellant's first and second assignments of error, we expect the trial court will re-open discovery in this matter, rendering this issue moot. As that result is not certain, however, we will address this assignment of error on the merits.
[13] Appellant's second argument is as follows: the trial court granted his motion, extending the general discovery cut-off by one month, to April 16, 2004. Accordingly, even if the court also extended every other deadline by the same one month, the deadline for filing of Appellee's expert witnesses would merely be extended to March 9, 2004. Appellee filed his supplemental list more than two weeks after that date. Appellant's argument, however, ignores the fact that he requested extension of all deadlines by one month or longer.