[Cite as *J.P. v. M.H.*, 2020-Ohio-13.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

J.P.

      Appellant

      v.

M.H.

      Appellee

C.A. No.     18CA011450

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    15CV187984

DECISION AND JOURNAL ENTRY

Dated: January 6, 2020

SCHAFER, Judge.

{¶1}     Plaintiff-Appellant, J.P., appeals from the judgment of the Lorain County Court of Common Pleas entering judgment upon a jury verdict in favor of Defendant-Appellee, M.H.

I.

{¶2}     J.P. filed a complaint against M.H. on November 13, 2015.  In the complaint, he asserted four causes of action: invasion of privacy, defamation, abuse of process, and civil conspiracy.  Following a stay pending the appeal of other cases the trial court deemed related to the parties and issues involved in this case, the matter proceeded through the pretrial process.

{¶3}     A jury trial commenced on October 15, 2018.  At the close of J.P.'s case, the trial court granted M.H.'s motion for directed verdict on the claims for defamation and abuse of process.  At the conclusion of the trial, the two remaining claims were submitted to the jury. Following deliberation, the jury returned its verdict finding in favor of M.H. on each of the claims.  On October 22, 2018, the trial court entered judgment on the verdict.

{¶4} The trial court denied J.P.'s motion for a new trial. J.P. then timely appealed the judgment. He presents four assignments of error for our review.

II.

**Assignment of Error I**

**The trial court erred and abused discretion to the prejudice of [J.P.] in entering judgment upon jury verdict against [J.P.], because Judge Inderlied erred and abused discretion to the prejudice of [J.P.] in being assigned to the case and in assuming personal jurisdiction over the case in the first place and in later overruling [J.P.]'s objection thereto.**

{¶5} In his first assignment of error, J.P. contends that the visiting judge assigned to hear this matter in the trial court "lacked personal jurisdiction over the case" because his assignment was an abuse of discretion, in that it contravened relevant rules for the assignment of visiting judges, and deprived J.P. of federal due process.

{¶6} The transcript of the trial court docket contains and entry on May 5, 2017 stating:

THE HONORABLE HERMAN FREDERICK INDERLIED, JR., A RETIRED JUDGE OF THE GEAUGA COUNTY COURT OF COMMON PLEAS, GENERAL AND DOMESTIC RELATIONS DIVISIONS, IS ASSIGNED EFFECTIVE 4/24/17 TO PRESIDE IN THE LORAIN COUNTY COURT OF COMMON PLEAS, GENERAL DIVISION, TO HEAR CASES 15CV185623, [J.P.] V. [T.H.]; 15CV186969, [M.H] V. [L.P.]; 15CV186968, [J.P.] V. [M.H.]; 15CV187984, [J.P.] V. [M.H.]; AND TO CONCLUDE ANY PROCEEDINGS IN WHICH HE PARTICIPATED. (S/C MAUREEN O'CONNOR, CHIEF JUSTICE)[.]

The transcript reflects that a copy of the certificate of assignment was entered upon the docket. Although the document is missing from the record on appeal, J.P. acknowledges that certificate 17JA0943 assigned Judge Inderlied to hear the case.

{¶7} J.P. filed an "objection to judicial assignment" on May 26, 2017. In the filing, J.P. objected to the assignment of Judge Inderlied, asserting that he lacked jurisdiction because his assignment to the case was "irregular[.]" The trial court issued an order overruling J.P.'s

objection. In the order, Judge Inderlied stated that he was assigned to the matter pursuant to Ohio Constitution Art. IV, Section 6(C), that he consented to the assignment, and that the Chief Justice of the Supreme Court of Ohio issued certificate of assignment 17JA0943.

{¶8} In his merit brief, J.P. argues that the assignment of Judge Inderlied failed to comport with Ohio's "specific rules and procedures for judicial assignment and re-assignment." Referencing the Guidelines for the Assignment of Judges issued by the Chief Justice of the Supreme Court of Ohio, J.P. contends that the reason for the reassignment was not stated in a journal entry, nor was it apparent from the record of the case. J.P. also argues that the assignment "violated" Lorain County Court of Common Pleas Loc.R. 7 IV.

{¶9} J.P. argues that the record does not reflect the recusal or disqualification of "[t]he last judge who lawfully assumed personal jurisdiction over the case[.]" Despite acknowledging that the docket contains a certificate from the Chief Justice of the Supreme Court of Ohio assigning Judge Inderlied to hear the case, J.P. contends that the "rules and provisions for judicial re-assignment were clearly and egregiously violated." According to J.P., the absence of a journal entry listing the justifiable reasons for the assignment of Judge Inderlied, together with the alleged failure to follow the rules to reassign a judge, give "the appearance if not the reality of case-fixing."

{¶10} Loc.R. 7 IV outlines the procedure for reassigning a case as follows:

> Any cases requiring reassignment shall be referred to the Administrative Judge along with reason for reassignment. When merited, the Administrative Judge will reassign the case. The Judge receiving the reassigned case may transfer a case of similar import to the Judge requesting reassignment.

Local rules are of a court's own making—not substantive principles of law—and there is generally no error if a court exercises its discretion to deviate from its rules in a particular case. *Schmitt v. Ward*, 9th Dist. Summit No. 27805, 2016-Ohio-5693, ¶ 13.

{¶11} J.P. has not provided any support for his contention that the trial court was bound to comply with Loc.R. 7 IV under these circumstances. Where, as is the case here, a "local rule is administrative and designed to facilitate case management, the court is not bound to comply with the rule." *GMAC Mtge., L.L.C. v. Jacobs*, 9th Dist. No. 24984, 196 Ohio App.3d 167, 2011-Ohio-1780, ¶ 20. Even assuming that the trial court failed to follow its own rule in the process of seeking the appointment of a visiting judge, J.P. has not demonstrated that a failure to follow Loc.R. 7 IV deprived him "of a reasonable opportunity to defend against the disposition of the case in favor of the other party[.]" *Id*. Therefore, we conclude that J.P. has not identified a reversible error and his argument regarding the trial court's alleged failure to follow Loc.R. 7 IV lacks merit.

{¶12} To the extent that J.P. also contends that the assignment of Judge Inderlied did not comply with the Supreme Court of Ohio's "Guidelines for assignment of Judges," we note that "these guidelines are not binding on Ohio courts." *Forsyth v. Feinstein*, 2d Dist. Clark No. 99-CA-66, 2000 WL 192298, *3; *Guidelines for Assignment of Judges*, https://www.sc.ohio.gov/JCS/judicialAssignment/judgeAssignGuide.pdf (accessed Oct. 21, 2019) ("While these guidelines may impose specific duties upon other persons, the Chief Justice may waive compliance with any guidelines to assist the exercise of that discretion. These guidelines have not been adopted as rules pursuant to Article IV, Section 5 of the Ohio Constitution and should not be construed as requiring adoption."). Although it may be the best practice to adhere to these guidelines, a failure to do so is not reversible error. *PNC Mtge. v. Guenther*, 2d Dist. Montgomery No. 25385, 2013-Ohio-3044, ¶ 22, fn. 3, quoting *Ward v. NationsBanc Mtge. Corp.*, 6th Dist. Erie No. E-05-040, 2006-Ohio-2766, ¶ 22 (stating that the

guidelines are not mandatory, have not been adopted as rules, and that "the failure to abide by them cannot be construed as a fatal or reversible act of the trial court.").

{¶13} J.P.'s first assignment of error is overruled.

### Assignment of Error II

**The trial court erred and abused discretion to the prejudice of [J.P.] in entering judgment upon jury verdict against [J.P.], because the trial court erred and abused discretion to the prejudice of [J.P.] in failing/refusing to grant [J.P.] his motion for default judgment and/or default judgment itself and/or at least a default judgment hearing, including because it was reversible error for the trial court to 1) grant [M.H.]'s motion for extension and an additional 30 days or until April 7, 2016, to answer or otherwise respond to [J.P.]'s complaint, 2) refuse to reconsider that grant, 3) fail/refuse to grant [J.P.]'s motion to strike [M.H.]'s motion for extension, 4) issue a stay, and 5) fail to grant [J.P.]'s motion to strike [M.H]'s answer.**

{¶14} In the second assignment of error, J.P. challenges several procedural rulings throughout the proceedings. He contends that these rulings culminated in the trial court abusing its discretion by entering judgment in favor of M.H. and against J.P. We disagree.

{¶15} The procedural history related to this assignment of error is summarized as follows. J.P. asserts that a deputy sheriff personally served M.H. with summons and a copy of the complaint on February 2, 2016, and that any motion or pleading in response to the complaint was due no more than 28 days later, or by March 1, 2016. It is undisputed that M.H. did not file a responsive pleading by March 1, 2016. One day later, on March 2, 2016, M.H., pro se, filed a motion for an extension of thirty days to file a pleading or motion and certified that she sent a copy of this motion to J.P. on March 1, 2016. On March 8, 2016, the trial court granted M.H. leave until April 7, 2016, to answer or otherwise respond to the complaint.

{¶16} J.P. presented the trial court with several filings on March 15, 2016. These filings included a motion for the trial court to reconsider and vacate its entry granting M.H. an extension of time to respond to the complaint, a motion to strike M.H.'s motion for extension on the

grounds that it was improper under Civ.R. 6(B), an opposition to M.H.'s motion for extension, and a motion for default judgment. The trial court issued a journal entry on March 21, 2016, denying J.P.'s motion to reconsider or vacate its decision to grant M.H. an extension of time to plead.

{¶17} On March 24, 2016, before M.H.'s extension of time to respond to the complaint had run, the trial court issued an order sua sponte staying the proceedings in this matter pending the resolution of two other cases—which the trial court deemed related to this case—then on appeal. On August 29, 2016, J.P. filed a second motion for default judgment, although nothing in the record would indicate that the stay imposed by the trial court had yet been lifted. M.H. filed her answer to the complaint on February 21, 2017. J.P. filed a motion to strike the answer, arguing that it was improperly filed.

{¶18} The trial court issued an order on May 2, 2017, instructing the parties to submit briefs regarding the status of the case. After reviewing the parties' status report and pending motions, the trial court issued an order summarily denying all of J.P.'s outstanding motions and the matter proceeded to trial.

{¶19} In his merit brief, J.P. argues the trial court erred by "failing" or "refusing" to grant his motion for default judgment. Civ.R. 12(A)(1) requires that a party file her answer within twenty-eight days after service of the complaint. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by the[ Ohio Rules of Civil Procedure]," Civ.R. 55(A) permits the party seeking judgment to file an application for judgment by default. "A trial court's decision to grant or deny a motion for default judgment is reviewed for an abuse of discretion." *MBNA America Bank, N.A. v. Canfora*, 9th Dist. Summit No. 23588, 2007-Ohio-4137, ¶ 10. An abuse of discretion means that the trial

court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶20} "Although Civ.R. 55(A) permits a default judgment when a defendant fails to answer or otherwise defend an action, a trial court has the discretion to permit an answer to be filed after the time for filing has run in the case of excusable neglect." *Kitson v. Gordon Food Serv.*, 9th Dist. Medina No. 15CA0078-M, 2016-Ohio-7079, ¶ 14. Here, J.P. did not move for default judgment until after M.H. had sought and obtained from the trial court an extension of time to file her response to the complaint. Nonetheless, J.P. challenges that M.H.'s motion requesting a leave to plead was improper and contends that the trial court erred by granting the extension, refusing to reconsider its decision to grant the extension, and rejecting J.P.'s request to strike the motion.

{¶21} The foundation of J.P.'s argument is that the trial court should not have considered any response by M.H. filed past the twenty-eight days prescribed by Civ.R. 12(A)(1) without a proper motion demonstrating excusable neglect for failing to timely file a pleading or otherwise respond to the complaint. J.P. argues that her pro se motion for an extension "could not have been construed by the trial court as a motion for leave," because the motion did not include an attached proposed answer. He also argues that M.H.'s motion "did not even expressly mention, assert, or argue excusable neglect * * *."

{¶22} M.H. does not dispute that she filed her motion for an extension of time to plead one day after the time to plead had run. However, she maintains that her motion was proper under Civ.R. 6(B). She also contends that she demonstrated excusable neglect in her request for an extension of time.

{¶23} The Rules of Civil Procedure permit a party to move for an extension of the Civ.R. 12(A)(1)(a) time period, even after the expiration of the twenty-eight days. Civ.R. 6(B) provides that "[w]hen by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion * * * upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect * * *[.]" Neglect under Civ.R. 6(B)(2) involves "conduct that falls substantially below what is reasonable under the circumstances[,]" and, in determining whether neglect is excusable, "all the surrounding facts and circumstances must be taken into consideration." *Davis v. Immediate Med. Services, Inc.*, 80 Ohio St.3d 10, 14 (1997). This Court also "reviews a trial court's grant of an extension of time to plead under an abuse of discretion standard." *Watkins v. Williams*, 9th Dist. Summit No. 22162, 2004-Ohio-7171, ¶ 16.

{¶24} Despite J.P.'s suggestion, M.H. was not required to submit a proposed answer along with her motion requesting an extension of time to plead. Furthermore, his contention that M.H. made no attempt to demonstrate excusable neglect is flatly contradicted by the record. In her motion, M.H. requested an extension of thirty days to file a pleading or motion in response to the complaint. The motion informed the trial court that

> [M.H.] is a single mother who had to go to [c]ourt to get a restraining order against [J.P.] and his brother. Subsequent to being granted that [protection o]rder, [J.P.] filed an appeal. [M.H.] had to retain the assistance of a lawyer in that matter. The grounds for this motion are that [M.H.] does not yet have the funds to retain a lawyer for this related [c]omplaint but expects to be able to earn the necessary funds over the next month.

J.P. argues that M.H.'s failure to timely plead shows a "deliberate disregard" for the judicial process and for his rights, and asserts that her "excuse was transparently specious[.]" However, the record does not support J.P.'s interpretation of the facts and circumstances surrounding

M.H.'s delay of one day in filing the motion for an extension, and J.P. has not established a valid basis for his claim that M.H.'s conduct amounts to inexcusable neglect. Therefore, this Court does not agree that the trial court abused its discretion by granting M.H.'s motion and allowing the extension of time to respond to the complaint.

{¶25} Because J.P. failed to demonstrate error in the trial court's decision to grant the extension to M.H., his arguments alleging error in the trial court's rejection of his motions to reconsider and motion to strike also fail. More significantly, because M.H. had leave until April 7, 2016, to respond to the complaint, J.P.'s March 15, 2016 motion for default judgment was premature. Consequently, the trial court did not abuse its discretion by denying the motion for default judgment.

{¶26} J.P. raises several additional challenges to decisions of the trial court within this assignment of error. He contests the stay of the proceedings imposed by the trial court, the failure to grant his second motion for default judgment filed August 29, 2016, and the trial court's denial of his motion to strike M.H.'s answer. J.P. asserts that these other alleged errors "must necessarily be discussed together in a single assignment of error, because they all reflect the basic error of the trial court in refusing to grant [J.P.]'s motion for default judgment." However, there is no significant correlation between the denial of the initial motion for default judgment and the additional issues J.P. attempts to raise.

{¶27} Pursuant to App.R. 12(A)(2), this Court "may disregard an assignment of error presented for review if the party raising it * * * fails to argue the assignment separately in the brief, as required under App.R. 16(A)." As appellant, J.P. "bears the burden of affirmatively demonstrating the error on appeal," substantiating his arguments in support of alleged errors, and to comply with the applicable rules. *Ohio Edison Co. v. Williams*, 9th Dist. Summit No. 23530,

2007-Ohio-5028, ¶ 10. J.P. failed to separately argue and to properly support these additional alleged errors, and this Court declines to address the merits of such claims.

{¶28} J.P.'s second assignment of error is overruled.

## Assignment of Error III

**The trial court erred and abused discretion to the prejudice of [J.P.] in entering judgment upon jury verdict against [J.P.], because the trial court erred and abused discretion to the prejudice of [J.P.] in refusing to enforce [J.P.]'s trial subpoena to [T.H.].**

{¶29} J.P. argues that he issued a valid subpoena to a witness for trial and that, despite actual or constructive notice, the witness failed to appear. He contends that the trial court erred by refusing to enforce the subpoena, resulting in prejudice to J.P. in presenting his case to the jury. We disagree.

{¶30} J.P.'s argument implicates Civ.R. 45(B), which provides that

[s]ervice of a subpoena upon a person named therein shall be made by delivering a copy of the subpoena to the person, by reading it to him or her in person, by leaving it at the person's usual place of residence, or by placing a sealed envelope containing the subpoena in the United States mail as certified or express mail return receipt requested with instructions to the delivering postal authority to show to whom delivered, date of delivery and address where delivered * * *."

This Court generally applies an abuse of discretion standard of review in the appeal of a discovery ruling, including a trial court's decision to quash or to enforce a subpoena. *McDade v. Morris*, 9th Dist. Summit No. 27454, 2015-Ohio-4670, ¶ 8. However, if a trial court's discretionary decision is based on a specific construction of law, an appellate court may substitute its judgment for that of the trial court and a de novo standard is applied. *Petro v. N. Coast Villas Ltd.*, 136 Ohio App.3d 93, 96 (9th Dist.2000).

{¶31} At trial, J.P. indicated his intention to call M.H.'s father, [T.H.], as a witness. However, T.H., who is not a party to this case, was not present in court. J.P. asserted that T.H.'s appearance was required because he had been served with a subpoena.

{¶32} Counsel for M.H. advised the trial court that "[T.H.] was not subpoenaed." The trial court sought clarification of the issue and, upon inquiry, J.P. admitted that he did not serve the subpoena on T.H. directly, but that he instead issued the subpoena for T.H. by serving it on the attorney who, he believed, represented T.H. in another matter. The trial judge explained to J.P. that he did not believe the subpoena was properly served on T.H. and, consequently, there was no obligation for T.H. to appear or to attempt to quash the defective subpoena. In light of J.P.'s insistence that case law existed to show that his service of the subpoena was sufficient, the trial court afforded him the opportunity to present the trial court with authority to support his position.

{¶33} When the trial resumed the following morning, J.P. was unable to provide the trial court with any authority to establish his claim that a subpoena can be served on attorneys who represent the person named therein in a capacity unrelated to the subpoena. The trial court informed J.P. that its own research indicated that the subpoena cannot be served on counsel. Accordingly, the trial court confirmed its ruling that the attempt to serve the subpoena on T.H. in that manner was insufficient.

{¶34} In his arguments on appeal, J.P. has not presented this Court with any authority to demonstrate error in the trial court's finding that the subpoena he attempted to serve on T.H. was defective. In his merit brief, J.P. cites to *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14 (1988) as the authority he "alluded to" before the trial court, though he failed to actually present the case to the trial court. Nevertheless, in *Denovchek*, the Supreme Court of Ohio stated

"[w]here a subpoena is left at the business location or place of employment of a witness and where that witness has actual knowledge of the subpoena, a valid service of summons has been completed." *Id*. at 15. J.P. does not contend that the subpoena was left at T.H.'s business location or place of employment, nor does he aver that T.H. himself had actual—as opposed to constructive—knowledge of the subpoena. J.P. has failed to explain how the holding in *Denovchek* might validate the manner in which he attempted to serve the subpoena on T.H..

{¶35} Upon review, we find no support in Civ.R. 45(B) for effecting proper service of a subpoena on a non-party to appear as a witness at trial by serving the subpoena on an attorney who is believed to represent that individual in a capacity unrelated to his role as a potential witness in the present matter. Because we conclude that the trial court did not err in finding that the subpoena was procedurally defective, we further conclude that J.P.'s argument that the trial court erred by refusing to enforce the defective subpoena is without merit. Therefore, his third assignment of error is overruled.

### Assignment of Error IV

**The trial court erred and abused discretion to the prejudice of [J.P.] in entering judgment upon jury verdict against [J.P.], because the trial court erred and abused discretion to the prejudice of [J.P.] in allowing [M.H.] to call [J.B.] as a witness—rebuttal or otherwise—in her case.**

{¶36} In the fourth assignment of error, J.P. argues that the trial court erred to his prejudice when it allowed M.H. to call [J.B.] as a witness to impeach the credibility of J.P. and rebut testimony he gave during trial. He contends that J.B., who was not previously disclosed as a potential witness, gave "extremely damaging" and "inflammatory" testimony. We disagree that the trial court erred.

{¶37} Following J.P.'s testimony in his case-in-chief, M.H. informed the trial court of her intention to call J.B., a previously undisclosed witness, for the sole purpose of challenging

J.P.'s credibility. Specifically, she intended to have this witness testify that J.P. had previously videotaped him, thereby contradicting statements made by J.P. during his testimony. Counsel for M.H. confirmed that he had "no interest in offering anything other than questions to challenge [J.P.'s] credibility."

{¶38} Over J.P.'s objection, the trial court ruled that it would permit J.B. to testify for the limited purpose of rebuttal. J.P. argued that the ruling was unfair because, although M.H. knew about J.B., she did not list him as a potential witness prior to trial. The trial court explained that M.H.'s position was that "the necessity for [J.B.]'s testimony did not arise until [J.P.] testified with respect to showing [a] particular video."

{¶39} During the brief direct examination, J.B. testified that J.P. recorded video of J.B., his wife, his adult stepdaughter, and his three-year-old grandson. J.B. also testified that J.P.'s brother had filmed J.B. at a grocery store. He further testified that he believed he had "observe[d] [J.P.] point a camera" at a woman who lived "next door to [T.H. ad M.H.]."

{¶40} "A trial court's decision on whether to allow rebuttal evidence will not be reversed absent an abuse of discretion." *Ponder v. Kamienski*, 9th Dist. Summit No. 23270, 2007-Ohio-5035, ¶ 24. The testimony of a rebuttal witness is relevant to "explain, refute or disprove new facts introduced into evidence by the adverse party;" and the scope of the testimony is limited to such evidence. *State v. McNeill*, 83 Ohio St.3d 438, 446 (1998). Where a witness was not identified prior to trial, the trial court may exclude the testimony of the undisclosed witness "only when the failure to disclose the witness caused unfair surprise with resulting prejudice to the opposing party." *Trajcevski v. Bell*, 115 Ohio App.3d 289, 294 (9th Dist.1996). We also apply the abuse of discretion standard to review the trial court's decision as to whether the undisclosed witness is allowed to testify. *See id.*

{¶41} On appeal, J.P. argues that "[M.H.]'s failure prior to trial to disclose [J.B.] as a trial witness was willful non-compliance." It is J.P.'s contention that J.B. was not a proper rebuttal witness. He asserts that J.B. could not have been a rebuttal witness because M.H. had contacted him sometime prior to trial to see if he would be willing to testify. Additionally, although J.P. acknowledges his testimony stating "that he did not recall videoing any neighbors in the development" other than the family of M.H., he argues that J.B.'s testimony did not actually rebut any of J.P.'s testimony. Alternatively, he argues that J.B.'s testimony was an "unfair surprise" and "unduly prejudicial."

{¶42} Initially we note that the complete transcript of the trial is not in the appellate record. However, the portions of the transcript that are before this Court do not support J.P.'s contentions in this assignment of error. To the extent that J.P. claims that J.B.'s testimony was an unfair surprise, or that M.H. sought any information beyond the scope of rebuttal evidence, the record reflects that J.P. did not object to any particular questions asked of J.B. or any statements made during his testimony. Furthermore, J.P. acknowledges that he was aware of the contents of his video recording of J.B. and his family, which contradicts the claim that he was "unfairly surprised" by such testimony. In his merit brief, J.P. cites to portions of the transcript where he claims that J.B. tended to "falsely paint" J.P. and his brother as stalkers and made "scandalous assertions" that J.P. had no opportunity to dispute. What J.P. fails to mention in his brief is that he elicited this allegedly damaging and inflammatory testimony from J.B. during his own cross-examination of the witness.

{¶43} Upon our review of the record, we conclude that J.P. has not substantiated his claims that M.H. intentionally failed to identify J.B. as a witness or that the trial court erred in permitting his testimony. The trial court allowed J.B.'s testimony for the limited purpose of

refuting claims made by J.P. during his testimony, and J.P. has failed to demonstrate that he was unfairly surprised or prejudiced by this testimony in any way. Therefore, we must conclude that the trial court did not abuse its discretion in permitting the testimony of J.B.. J.P.'s fourth assignment of error is overruled.

III.

{¶44} J.P.'s four assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

CALLAHAN, P. J.
HENSAL, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

J.P., pro se, Appellant.

GERALD WALTON, Attorney at Law, for Appellee.